SULKOWSKI, Respondent, v. SCHAEFER and another, Appellants.

*June 8—July 1, 1966.*

602

For the appellants there was a brief by *Hoffman, Cannon, McLaughlin & Herbon,* attorneys, and *David M. Quale* of counsel, all of Milwaukee, and oral argument by *Mr. Quale.*

For the respondent there was a brief by *Teper & Weiss,* attorneys, and *James P. O'Neill* of counsel, all of Milwaukee, and oral argument by *Mr. O'Neill.*

FAIRCHILD, J. (1) *Suggested negligence of plaintiff.* It is undisputed that although Barbara made some general observations as to the street they were on, the approximate speed of the car, and the like, she was not "paying any particular attention to the road" and that she did not see the parked car before they struck it. Defendants contend this was evidence from which the jury could find her negligent as to lookout, and further

suggest she may have been "distracting" Robert as he drove.

Robert (aged twenty-one) and Barbara (aged twenty) had spent the evening together, beginning at about 7:30. They attended a wedding reception at a hotel in downtown Milwaukee, staying until shortly before the accident at 11:30. At the party they danced, talked with friends, and each had four, or perhaps as many as six, glasses of tap beer.

After leaving the reception, Robert drove west on West Clybourn street. He drove in the right-hand lane of two lanes for westbound traffic. There was a parking lane to his right. He was driving 25 to 30 miles per hour. A few feet west of North Eighteenth street, he struck a car parked in the parking lane. He did not see the parked car before the collision. He testified that just before the collision he was talking to Barbara, and was looking to his right, at her, but did not remember how long he had been looking at her before the impact.

Barbara was seated in the middle of the front seat, next to Robert. Just before the collision "We were talking, and Bob looked at me and I looked at him and in that split second we hit the car." There was no other evidence to indicate that Barbara knew or should have known that Robert was not keeping a lookout, nor that he was driving improperly in any respect.

An automobile passenger is not held to the same degree of care with respect to lookout as is the driver.[1] What constitutes a proper lookout on the part of a passenger depends upon the circumstances.[2] A passenger's failure to see developing danger does not always raise a jury question as to his negligence with respect to lookout.[3] The driver's inattention or other circumstances of which

---

[1] *Baker v. Herman Mut. Ins. Co.* (1962), 17 Wis. (2d) 597, 606, 117 N. W. (2d) 725.

[2] *Lewis v. Leiterman* (1958), 4 Wis. (2d) 592, 597, 91 N. W. (2d) 89.

[3] *Lampertius v. Chmielewski* (1959), 6 Wis. (2d) 555, 559, 95 N. W. (2d) 435.

the passenger must have been aware may alert the passenger to the need of a more intensive lookout than ordinarily required.[4]

We have held that the mere fact that a passenger's head was turned to one side while talking with another passenger was not sufficient to warrant a jury finding that the passenger was negligent with respect to lookout.[5] In the instant case we have no more, except that the passenger's conversation was with the driver. Although she saw him turn his head toward her, and this may have put her on notice that he was not keeping a sufficient lookout, the record shows this was immediately prior to the collision. It would be speculative to find that greater lookout by plaintiff at that moment could have averted the accident.

Defense counsel relies upon our past statements that "In almost all instances the issue of contributory negligence of a guest is for the jury to determine." [6] Professor Campbell, writing in the Wisconsin Law Review [7] has opined that "the ritual of submission to the jury has often seemed to go far beyond the requirements of reasonable care," and he has discerned a recent trend away from such "ritual." There are instances, of course, where a trial judge wisely submits such question, even though he doubts the foundation, where answers finding such negligence and making a comparison can be stricken by him or by this court if, upon reflection, the evidence is insufficient to sustain them, but it is not the rule that contributory negligence of a passenger who failed to see developing danger is always a jury question.

---

[4] See, for example, *Romberg v. Nelson* (1959), 8 Wis. (2d) 174, 179, 98 N. W. (2d) 379, where the driver's attention was being diverted by his "monkeying with the radio."

[5] *Puccio v. Mathewson* (1951), 260 Wis. 258, 270, 50 N. W. (2d) 390.

[6] *Vandenack v. Crosby* (1957), 275 Wis. 421, 434, 82 N. W. (2d) 307; *Lewis v. Leiterman, supra,* footnote 2.

[7] 1962 Wisconsin Law Review, 557, 567, Wisconsin Law Governing Automobile Accidents—Part II.

Defense counsel contends that the jury could have found Barbara negligent for distracting the driver because she was sitting "right next" to him, they had drunk beer, and they were looking at each other just before the collision. Such a finding would be speculative, on this record.

(2) *Claim that damages of $10,000 were excessive.* Barbara struck her head against the windshield and cut her right cheek. The cut was about five inches long, from nose to ear, and went to the covering of the bone. There was also a severe bruise on her right upper leg.

Dr. Natvig, a plastic surgeon, treated her the night of the accident, closing the cheek laceration with 120 sutures. She was in the hospital three or four days. Dr. Natvig saw her from time to time, and in April, 1964, performed a dermabrasion on her right cheek. This was done at the hospital, under general anaesthetic, and consisted of running a sandpaper roll so as to "plane" the skin surface. She was in the hospital four days. The flesh was raw, and she was given medication for the pain. Up to this time she wore a bandage over the scar.

On examination shortly before trial, Dr. Natvig observed a scar over the right cheek, measuring 9.5 cm. in length and 2 mm. in width at the widest portion. The scar is soft and the color is nearly that of the adjacent skin. Near the middle of the scar there was a slight fold or widening, with a little bit of excess scar tissue showing or white area which could be modified by further surgery, requiring about three days' hospitalization. He also saw other small scars on the face and the right leg. The scars are permanent.

Another plastic surgeon, Dr. Docktor, examined her at the request of defendants in April, 1965. He described the facial scar as a

". . . noticeable, semilunar, 9 and a half centimeter scar on the right side of the face . . . The anterior portion of the scar, which measures four and one half centi-

meters is noticeable because of the elevation or redundancy of the superior skin margin. The scar is noticeable both on facial repose and in the puckering expression. There is no impairment of facial movement or sensation."

He noted other small scars, but did not consider them noticeable except on close inspection. He considered that the long scar could be improved by surgery, but it would still be evident.

It appears that plaintiff suffered pain, particularly resulting from the cut on her cheek, and that she felt it necessary to hide the long facial scar by wearing a bandage during the first six months after the accident. The scars are permanent, although those other than the long facial scar are not particularly noticeable. The jury and the trial judge observed this scar, an opportunity which we do not have, even by photograph. In ruling on motions after verdict, the trial judge said: "It is the considered opinion of this court that the verdict is not excessive. I would characterize it as being reasonable under the circumstances." Plaintiff, at the time of trial, had an indicated life expectancy of 40.85 years. We cannot say that the $10,000 award is outside the range of reasonably debatable amounts.

(3) *Expense of surgery in the future.* Plaintiff was a minor when injured, but paid for the surgical and hospital care she received, either directly or through insurance for which she had paid. No one has questioned her right to recover for the value of the services rendered to her before trial. Defendants object, however, to awarding her the reasonable value of surgery in the future which the doctors recommend in order to improve her scar. Defense counsel points out that she is now married, and contends that her husband is obligated to provide such care, and therefore that she cannot recover for it. (Doubtless defendant insurance company is more enthusiastic about this point than defendant driver, since he happens to be the husband as well as the wrongdoer.)

We are not aware of any case dealing with a transfer of the right of recovery for medical care, effected by a change in status of the injured person from minor to adult, from single to married woman, or from married to single woman.

It is the general rule that a plaintiff who has been injured by tortious conduct is entitled to recover the reasonable value of medical and similar services reasonably required by the injury. This is simply an element of damages for the tort. Wisconsin follows this rule, generally, but recognizes that where the injured person is a minor child or married woman, the tort creates in the parent or husband a cause of action for the value of the care made necessary by the wrongful act and such element of damages may not be included in the recovery of the injured person.[8]

We also hold that in the case of an injured wife who obligates herself by contract to pay for the care, she, rather than her husband, may recover for it.[9] In the instant case no contract has yet been made.

The theory which underlies recognition of the parent or husband's cause of action for such recovery must be that because he is obligated to provide such care, the tortious act has injured him. This theory does not apply to a husband whose obligation to provide care arises after the injury, as a result of his marriage to the injured woman. Accordingly it seems appropriate to permit a woman who is unmarried at the time of the injury to recover the reasonable value of all the care required even though she marries before some of the required care has been afforded her, and before her damages have been paid to her or judicially determined.

---

[8] *McLaughlin v. Chicago, M., St. P. & P. R. Co.* ante, p. 378, 143 N. W. (2d) 32.

[9] *Seifert v. Milwaukee & Suburban Transport Corp.* (1958), 4 Wis. (2d) 623, 626, 91 N. W. (2d) 236; *Jewell v. Schmidt* (1957), 1 Wis. (2d) 241, 250, 83 N. W. (2d) 487.

We realize that this theory of determining her right to recover on the basis of the situation at the time of injury will not always be practical. Doubtless there are cases where an injured minor becomes an adult, or an injured married woman becomes a widow or divorcee before damages have been paid or judicially determined and before all the required care has been obtained, and where it will be sensible and fair to let the injured person recover for such care as she will be forced to provide for herself to repair the injury. Although permitting the injured person to recover in such circumstances may be inconsistent, as a matter of theory, with permitting recovery in the instant case, we deem the recovery in cases like the present one to be sound and proper.

*By the Court:*—Judgment affirmed.

HALLOWS, J., took no part.