HOEFT, Plaintiff and Respondent, v. FRIEDEL and others,
Defendants and Appellants: SCHOLTEN and another,
Defendants and Respondents.

*No. 562 (1974). Argued November 25, 1975.—*
*Decided December 19, 1975.*
(Also reported in 235 N. W. 2d 918.)

1024

For the appellants there were joint briefs by *Kenehan & Huckaby*, attorneys, and *Karl W. Huckaby, Jr.* of counsel, all of Milwaukee, for appellants Mary L. Friedel and American Family Mutual Insurance Company, and by *Cook & Franke S. C.*, attorneys, and *Robert F. Johnson* of counsel, all of Milwaukee, for appellants Mary L. Friedel and Sentry Insurance Company, and oral argument by *Mr. Johnson.*

For the plaintiff-respondent there was a brief and oral argument by *Herbert L. Usow S. C.* of Milwaukee.

For the defendants-respondents there was a brief by *Prosser, Wiedabach, Lane & Quale, S. C.*, attorneys, and *William R. Croke* of counsel, all of Milwaukee, and oral argument by *Mr. Croke.*

BEILFUSS, J. The issues presented are as follows:

(1) Did an emergency exist as a matter of law?

(2) Should the plaintiff have been found equally negligent as a matter of law upon a theory of agency or maintenance of control and should the jury have been allowed to consider plaintiff's negligence in the actual operation and control of the automobile?

(3) Did the trial court err in reducing the jury award of $17,000 for future disability to $9,000?

Appellants contend that the evidence establishes, as a matter of law, that Mary Friedel was faced with an emergency and, therefore, could not have been negligent in causing the collision. Prior to the submission of the case to the jury, counsel for appellants moved that a verdict be directed for Mary Friedel or, in the alternative, that she be found free from negligence as a matter of law. Both motions were based on the theory that the emergency doctrine should apply as a matter of law. Following the return of the verdict, these motions were renewed. The trial court denied the motions on the ground that "there was a wide variance in the testimony as to the extent of visibility in number of feet or car lengths, and there was a variance with regard to speed of the vehicles and the lapse of time." In addition to these, Mary Friedel stated she did not see the Scholten car until she was four to five car lengths from it, and Hoeft testified she had increased her speed somewhat from the 45 miles per hour just before the incidents in question. This variance, the court concluded, created a question for the jury as to whether the emergency rule should apply and it was so instructed.

The jury concluded that the doctrine did not apply because it apportioned 15 percent of the causal negligence to Miss Friedel. While the trial judge disagreed with the jury's finding as to an emergency, he did determine

that the jury's finding was supported by credible evidence.

The emergency doctrine relieves a person of liability for his action or nonaction when faced with an emergency which his conduct did not create or help to create. *Crossman v. Gipp* (1962), 17 Wis. 2d 54, 115 N. W. 2d 547; *Papacosta v. Papacosta* (1957), 2 Wis. 2d 175, 85 N. W. 2d 790. There are three prerequisites to the application of the emergency rule in an automobile negligence case: (1) The party seeking the benefits of the rule must be free from negligence which contributed to the creation of the emergency; (2) the time element in which action is required must be short enough to preclude deliberate and intelligent choice of action; and (3) the element of negligence being inquired into must concern management and control. *Geis v. Hirth* (1966), 32 Wis. 2d 580, 586, 146 N. W. 2d 459; *Gage v. Seal* (1967), 36 Wis. 2d 661, 154 N. W. 2d 354, 155 N. W. 2d 557.

Ordinarily the application of the emergency rule in automobile cases is a question for the jury. *Misiewicz v. Waters* (1964), 23 Wis. 2d 512, 127 N. W. 2d 776. To hold that an emergency exists as a matter of law, and thereby remove the issue from the jury, the trial court must conclude that there is no credible evidence which would support a finding that any one of the three prerequisites was not met. Because such a conclusion amounts to a directed verdict for the person faced with the emergency, the court must view the evidence in the light most favorable to the person against whom the verdict is sought to be directed.[2] In determining whether the trial court erred, therefore, in refusing to take the issue of Mary Friedel's negligence from the jury and in refusing to change the jury's answers in that regard, this court

[2] *See: Tombal v. Farmers Ins. Exchange* (1974), 62 Wis. 2d 64, 214 N. W. 2d 291; *Phoenix Ins. Co. v. Wisconsin Southern Gas Co.* (1970), 45 Wis. 2d 471, 173 N. W. 2d 610; *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 151 N. W. 2d 741.

must review the evidence in the light most favorable to plaintiff's contention that the application of the emergency doctrine was properly a question of fact to be considered by the jury.

The respondents contend that a jury question was presented as to whether Mary Friedel was negligent as to speed or lookout and whether such negligence contributed to or helped create the emergency. They contend that the jury could have found that an inexperienced driver was negligent in driving 45 to 50 miles per hour on a foggy day with visibility limited to 300 feet. Failure to operate a motor vehicle at a speed which will enable the operator to stop within the distance which he can see ahead presents an issue of negligence as to speed.[3] Relying upon the Standard Table of Stopping Distances, appellants contend that, under normal circumstances, a vehicle traveling 45 to 50 miles per hour can stop within a distance of 160 to 186 feet. This distance, appellants point out, is well within the estimates of visibility on the day of the accident. The table of stopping distances was available to the jury and appellants contend that, upon the evidence, Mary Friedel could not have been found negligent as to speed.

It is permissible for a jury to consider this table in determining whether the operator of a motor vehicle was negligent as to speed or control.[4] However, stopping distances depend upon a variety of factors, including the driver's reaction time. The table is to serve as a guide only and should not be considered conclusive on the issue of whether a driver was negligent as to speed.

While there was evidence that Mary Friedel had driven an automobile before the day of the accident, it is undisputed that she was still engaged in the learning

---

[3] *See: Vanderkarr v. Bergsma* (1969), 43 Wis. 2d 556, 168 N. W. 2d 880.

[4] *See: Keplin v. Hardware Mut. Casualty Co.* (1964), 24 Wis. 2d 319, 129 N. W. 2d 321, 130 N. W. 2d 3.

process. The operation of a motor vehicle presents a considerable danger to others if undertaken by one not competent to do so. It is recognized that competence is gained only through practice. However, the beginning driver must be aware of his limitations and take special precautions to minimize the danger to others. *See:* Restatement, 2 *Torts* 2d, p. 71, sec. 299, Comment *d.* In this case, the speed of the Volkswagen might be considered reasonable under the circumstances for the average, competent driver. However, it may have been unreasonable for a driver with Mary Friedel's admitted lack of experience. A person aware of his own limitations is required to take whatever precautions a similarly situated person would consider reasonable under the circumstances. *See: Merkley v. Schramm* (1966), 31 Wis. 2d 134, 142 N. W. 2d 173. We believe that a jury issue was presented as to whether Mary Friedel was negligent as to speed prior to the emergency and whether that negligence helped create the emergency.

Appellants rely primarily on *Hoehne v. Mittelstadt* (1948), 252 Wis. 170, 31 N. W. 2d 150, where, upon similar facts, this court held that an emergency situation existed as a matter of law. However, in that case there was no question as to the subject-driver's experience or competence. It is therefore distinguishable on this basis. Because of variances in the testimony referred to above, and a question as to the adequacy of lookout and speed, we agree with the trial court that the emergency doctrine should not have been applied as a matter of law but should have been resolved by the jury.[5]

The appellants contend the trial court was in error in failing to recognize that the relationship between the defendant Friedel and the plaintiff Hoeft was more than the ordinary host-guest relationship. The appellants

[5] *See: Geis v. Hirth, supra,* and *Seif v. Turowski* (1970), 49 Wis. 2d 15, 181 N. W. 2d 388, 183 N. W. 2d 28.

cite Wisconsin cases which apply the principles of agency law to impute the negligence of the driver to his guest passenger. They also cite authority which recognizes an independent duty on the part of a driving instructor to supervise and control the operation of the automobile. While each theory is arguably applicable to this case, they are not mutually inclusive. The basis for liability under each is different. The two theories are intermingled without attempting to distinguish between them. We believe the proper disposition of this appeal requires that the distinction be made.

Appellants correctly state the rule in this state that the driver of a motor vehicle is presumed to be the agent of the owner.[6] Where this presumption is not rebutted, the rules of agency dictate that the driver's negligence be imputed to the owner. The majority of cases applying this principle of law have been concerned with the owner's liability for damages to third persons resulting from the driver-agent's negligent acts. However, the rule has been applied as well to a claim by the owner to recover from a third person for damages resulting, in whole or in part, from the driver's negligence.[7]

The respondents argue that the presumption of agency should not apply in this case because Michael Hoeft was not the owner of the Volkswagen and there is no evidence that he was acting as the agent of his father, the owner, in allowing Mary Friedel to drive. We agree that the

[6] *See: Enea v. Pfister* (1923), 180 Wis. 329, 192 N. W. 1018; *Laurent v. Plain* (1938), 229 Wis. 75, 281 N. W. 660; *Sevey v. Jones* (1940), 235 Wis. 109, 292 N. W. 436; *Le Sage v. Le Sage* (1937), 224 Wis. 57, 271 N. W. 369; *Strupp v. Farmers Mut. Automobile Ins. Co.* (1961), 14 Wis. 2d 158, 109 N. W. 2d 660; *Cochran v. Allyn* (1962), 16 Wis. 2d 20, 113 N. W. 2d 538; *Ruby v. Ohio Casualty Ins. Co.* (1967), 37 Wis. 2d 352, 155 N. W. 2d 121; *Gervais v. Kostin* (1970), 48 Wis. 2d 190, 179 N. W. 2d 828.

[7] *See: Hansberry v. Dunn* (1939), 230 Wis. 626, 284 N. W. 556.

presumption of agency in most of the cases has been held to run only to the owner of the vehicle. However, an agency relationship can be shown to exist between the driver and some person other than the record owner. The presumption which arises with respect to the actual owner is attached as a matter of policy based upon the principle that "whether the car was at the time being operated in the prosecution of the defendant's [owner's] business is a matter peculiarly within the knowledge of the defendant [owner] and one upon which it is at times exceedingly difficult for the plaintiff to obtain proof." *Enea v. Pfister, supra.* If the evidence presented demonstrates that an agency relationship exists between the driver and someone other than the record owner, there is no reason not to apply the rule of imputation.

"Agency" is defined in Restatement, 1 *Agency* 2d, p. 7, sec. 1 (1):

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

Comment *a*, p. 8, to that subsection provides, in part:

"The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control. . . ."[8]

As applied to the operation of an automobile, an agency relationship is sufficiently established where: (1) There is some agreement by the driver to act on the other's behalf or for his benefit; (2) some benefit results to the other party; and (3) the other party retains the right

[8] *See also: Sevey v. Jones, supra; Georgeson v. Nielsen* (1934), 214 Wis. 191, 252 N. W. 576.

to control the driver and direct him in the accomplishment of his purpose.

In this case both Michael Hoeft and Mary Friedel agreed that the primary purpose of the trip was to provide Miss Friedel with additional driving experience. Both agreed that Hoeft had given certain instructions on how to operate the Volkswagen and Hoeft testified that he "coached" Miss Friedel as they drove. An express agreement between the parties is not necessary if it is apparent from the facts that the parties contemplated that the driver was to act on the other's behalf and subject to his control. *Strupp v. Farmers Mut. Automobile Ins. Co., supra.* While the trip may have been undertaken primarily for Miss Friedel's benefit, it was not altogether devoid of benefit to Michael Hoeft. Both testified that they had visited a friend of Hoeft's who lived in Allenton. The benefit to the principal in such cases need not be substantial and need not be of a business character.[9]

Michael Hoeft was not the record owner of the Volkswagen and there was therefore no presumption of agency. However, the evidence, at the least, presented a jury question as to whether an agency relationship had been established. The trial court denied appellants' request that a question be included in the special verdict inquiring whether Mary Friedel was the agent of Michael Hoeft. While the form of the special verdict is within the discretion of the trial court, all relevant issues of fact in the case should, as a generalization, be covered by appropriate questions.[10] However, appellants do not assert it was error as such on this appeal. Their agency arguments are directed solely to the trial court's refusal to instruct the jury that Michael Hoeft, as a

[9] *Sevey v. Jones, supra; Cochran v. Allyn, supra; Schmidt v. Leary* (1934), 213 Wis. 587, 252 N. W. 151.

[10] *See: Plummer v. Leonhard* (1969), 44 Wis. 2d 686, 172 N. W. 2d 1; *Dahl v. K-Mart* (1970), 46 Wis. 2d 605, 176 N. W. 2d 342; *Carson v. Beloit* (1966), 32 Wis. 2d 282, 145 N. W. 2d 112.

passenger, was under the same obligation as the driver with respect to the actual control and operation of the Volkswagen. Michael Hoeft's liability under that instruction would be based upon independent negligence on his part, and not upon the imputation of Mary Friedel's negligence to him under an agency theory.

This court has generally based liability in situations factually similar to this one on principles of agency. The negligence of the student-driver is imputed to the passenger-teacher.[11] The facts of this case could raise a jury question as to whether such an agency relationship existed between Michael Hoeft and Mary Friedel. However, it also appears that Michael Hoeft's liability could be based upon a violation of an independent duty to supervise and control the automobile. This duty is distinct from and in addition to the ordinary obligation of an automobile guest passenger to exercise reasonable care for his own safety. It arises from the plaintiff's agreement, as an experienced driver, to instruct and supervise an inexperienced driver and is required by statute for the protection of third persons on the highway.[12]

As a general rule, an automobile guest passenger need exercise that amount of care which is reasonable under the circumstances for his own safety, and is not chargeable with the voluntary management or control of the vehicle. As a result, a guest's obligation to maintain a lookout for danger, for example, is not the same as that of the driver whose obligation is not only to himself and his guest, but to other persons on the highway.[13] The

[11] See: Sevey v. Jones, supra; Strupp v. Farmers Mut. Automobile Ins. Co., supra.

[12] See: Sec. 343.07, Stats.

[13] See: Davis v. Allstate Ins. Co. (1972), 55 Wis. 2d 56, 197 N. W. 2d 734; Murray v. Reidy (1963), 21 Wis. 2d 254, 124 N. W. 2d 120; Sulkowski v. Schaefer (1966), 31 Wis. 2d 600, 143 N. W. 2d 512; Theisen v. Milwaukee Automobile Mut. Ins. Co. (1962),

guest is ordinarily chargeable with "passive" negligence —negligence causal, not of the collision but of his own injuries. *Theisen v. Milwaukee Automobile Mut. Ins. Co., supra; Dutcher v. Phoenix Ins. Co.* (1968), 37 Wis. 2d 591, 155 N. W. 2d 609. Where the passenger assumes some part of the driver's duties or, in some way, interferes with the safe operation of the motor vehicle, his negligence is "active"—causal not only of his injuries, but also of the collision. *See: Dutcher v. Phoenix Ins. Co., supra.* In such a case the jury must be advised of the passenger's duties which extend beyond the mere obligation to exercise ordinary care for his own safety.

It is error for a court to refuse to instruct on a material issue which is raised by the evidence. A new trial will not be granted, however, unless the error is determined to be prejudicial. The test to be applied in determining whether such an error is prejudicial is the probability and not mere possibility that the jury was misled thereby. Stated another way, an error relating to the refusal to give an instruction is not prejudicial if it appears that the result would not be different had the error not occurred.[14]

In this case it is undisputed that Michael Hoeft offered to instruct Mary Friedel because of her inexperience as a driver. He testified that he explained to Miss Friedel how to shift, how to clutch, and how to operate the accelerator. Hoeft also stated that he "coached" Mary Friedel as she drove, watched to see that she was steer-

18 Wis. 2d 91, 118 N. W. 2d 140, 119 N. W. 2d 393. *See also:* Wis J I—Civil, Part I, 1047.1.

[14] *See: Aetna Casualty & Surety Co. v. Osborne-McMillan Elevator Co.* (1965), 26 Wis. 2d 292, 132 N. W. 2d 510; *United States Fidelity & Guaranty Co. v. Milwaukee & Suburban Transport Corp.* (1962), 18 Wis. 2d 1, 117 N. W. 2d 708; *Nashban Barrel & Container Co. v. Parsons Trucking Co.* (1971), 49 Wis. 2d 591, 182 N. W. 2d 448; *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 149 N. W. 2d 626.

ing properly, that she maintained a proper speed, and that she kept a proper lookout for other vehicles. He instructed her as to ordinary starting procedures and told her to turn on her lights. At one point, on cross-examination, the following exchange occurred:

"*Q.* Now, is it true that in taking Mary out, you made it clear to her that she was doing something wrong, you would tell her she was doing it wrong or tell her what she should be doing, is that correct?
"*A.* Yes.
"*Q.* If she was pushing in the clutch instead of the brake when she wanted to stop, you would say, 'That is the wrong pedal,' right?
"*A.* Yes, that is correct sir.
". . .
"*Q.* But at any rate you were instructing her as to— or the idea was—the understanding between you was that you would instruct her as to what she should and should not do?
". . .
"*A.* Yes."

The courts in a number of jurisdictions have held that the duty to use reasonable care to prevent injury to others is applicable to persons engaged in teaching another how to drive.[15] These cases indicate that liability is based not upon an imputation of the driver's negligence to the instructor but upon the failure of the instructor in the exercise of his independent obligation of reasonable care. We believe that the "independent duty" theory is more appropriate to this factual situation than the traditional agency doctrine. The trial court should have allowed the jury to consider whether Michael Hoeft exercised due care in the supervision and control of the Volkswagen and Mary Friedel's operation of it.

---

[15] *See generally:* Annot., *Liability, For Personal Injury or Property Damage For Negligence in Teaching or Supervision of Learning Driver,* 5 A. L. R. 3d 271. *See also: Wolpert v. Garrett* (1951), 278 App. Div. 893, 105 N. Y. Supp. 2d 21; *Forker v. Pomponio* (1960), 60 N. J. Super. 278, 158 Atl. 2d 849.

The respondents contend that the jury was aware of the facts evidencing a student-teacher relationship and the plaintiff's right to control the vehicle. As a result, respondents argue, the jury must be assumed to have taken those facts into consideration in making its apportionment of negligence between the parties. However, under the instructions which were given, the jury might not have been able to give these facts their full import. The jury was instructed that "[t]he legal relationship which existed between Mary L. Friedel and plaintiff, Michael H. Hoeft, was that of host and guest, the former being the host-driver and the latter being a guest-passenger." The jury was instructed only as to the plaintiff's obligation to exercise care for his own safety and had no opportunity to consider his acts which may have contributed to the collision itself. While acts causal of the collision are necessarily causal as well of injuries, the character and nature of the acts which constitute "active" as opposed to "passive" negligence are undisputably different.[16] The instructions given in this case required the jury to consider only that conduct of the plaintiff which would constitute "passive" negligence.

We conclude that the trial court's refusal to give the requested instruction which would have allowed the jury to consider the plaintiff-passenger's conduct with respect to the actual operation of the Volkswagen as negligence was prejudicial error.

The appellants contend that, applying such a theory, the plaintiff was at least as negligent as Miss Friedel and that the trial court erred in refusing to change the jury's answers to reflect such a finding. We conclude that while a jury question was present on this issue, the evidence does not warrant a conclusion that Michael Hoeft's negligence was equal to or greater than that of Mary Friedel as a matter of law. Ordinarily, apportionment of negligence is for the jury.

---

[16] *Theisen v. Milwaukee Automobile Mut. Ins. Co., supra.*

The trial court determined that the jury's award of $17,000 for future disability was not supported by the evidence. It concluded that $9,000 was fair and reasonable under the evidence and ordered a new trial as to damages unless the plaintiff elected to accept the reduced amount. The plaintiff, by his cross appeal, claims that the evidence does support the award and that to reduce it was error.

We are inclined to a belief that the evidence does support a damage award of $17,000 for future disabilities because of the nature of plaintiff's permanent injuries and his life expectancy. However, the trial court was in a much more advantageous position to evaluate the credibility of the plaintiff and the various medical witnesses and the weight of their evidence. Further, the trial court did carefully review the evidence concerning this item of damage in ruling upon the motions after verdict.

Because a new trial is required on the liability issues, the doubts that exist as to the damages can best be resolved by a new trial on all issues.

*By the Court.*—Judgment reversed and a new trial ordered. No appeal costs to be taxed.