William T. DELMORE, individually and as Special Administrator of the Estate of Rosemary C. Delmore, Deceased, Plaintiff-Appellant-Petitioner,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, ABC Insurance Co., and Wayne J. Konkol, Defendants-Respondents.

Supreme Court

*No. 82–598. Argued November 29, 1983.—Decided May 30, 1984.*

(Also reported in 348 N.W.2d 151.)

For the plaintiff-appellant-petitioner there were briefs in court of appeals by *Larry B. Brueggeman, Virginia M. Antoine* and *Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, S.C.*, Milwaukee, and oral argument by *Larry B. Brueggeman.*

For the defendants-respondents there was a brief in court of appeals by *James R. Sommers* and *Hunter & Sommers*, Waukesha, and oral argument by *James R. Sommers.*

HEFFERNAN, C.J.   This is a review of an unpublished per curiam decision of the court of appeals dated

February 9, 1983, which affirmed a judgment of the circuit court for Waukesha county, John P. Buckley, Circuit Judge.

The circuit court summary judgment was entered after a motion by the defendant Konkol and his insurance company, American Family Mutual Insurance Company. The underlying contention of the plaintiff was that Wayne J. Konkol, a passenger in a car driven by Anthony E. Donarski, assumed the duties of the driver as to management, control, and lookout of the vehicle driven by Donarski, and that such conduct was negligent, for which conduct Konkol could be held liable to persons in a vehicle with which the Donarski car collided. The plaintiff's argument, in light of the facts, was rejected by the circuit court, and the judgment was affirmed by the court of appeals. We affirm the court of appeals.

In a summary judgment proceeding, a court must make two determinations: First, whether there is a dispute as to a material fact, and, second, whether the law is clear. If there is a factual dispute, the case must be tried and the facts determined by a judge or jury. Either party may, in a proper case, move for summary judgment; but, because the effect of granting the motion is to deprive the other party of a trial, the burden is on the movant to establish there are no material facts in dispute. In the event affidavits or other of the moving party's documents, viewed in a light most favorable to the party opposing the motion, do not with clarity establish the absence of any factual dispute on a material matter, the motion must be denied.[1] In the event there is no factual dispute, a question of law is presented. Thus, in the event no material facts are in dispute, a court's next determination is in respect to the applicable law: Is the

---

[1] *See,* sec. 802.08(2), Stats., and *Poynter v. Johnston,* 114 Wis. 2d 439, 446, 338 N.W.2d 484 (1983), quoting *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

movant, under the law, entitled to judgment or should judgment be granted as a matter of law to the nonmoving party.

We turn, then, to the facts as recited in the affidavits of the parties or in their attorneys' affidavits in which witnesses' affidavits or depositions are excerpted.

In summary of the facts constituting the plaintiff's claim for relief, it appears that Wayne J. Konkol went to a school dance as a passenger in a car driven by Anthony E. Donarski. Donarski and Konkol met three friends, and they decided to go to the Pizza Hut after the dance. Because the friends, who were in two separate cars, did not know the route to the restaurant, they decided to follow Donarski, who did.

Enroute to the Pizza Hut, the Donarski car ignored a stop sign, went into the intersection of Crowbar Drive and State Highway 24 without stopping, colliding with an automobile operated by William T. Delmore and killing his wife, Rosemary, who was a passenger in the car.

Action was commenced against Anthony Donarski and his insurance company, as well as against Konkol and his insurers. The action against Donarski was settled by taking a *Pierringer* release. *Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

Motion for summary judgment was made by the defendants, contending that there were no issues of material fact and that, as a matter of law, based on the undisputed facts, Konkol, under Wisconsin law, could not be liable.

Both the trial court and the court of appeals found that no material facts were at issue.

There appears to be no disagreement in respect to the following facts revealed in the various affidavits. Wayne Konkol at the time of the accident was fifteen years old. He was a passenger in the Donarski car and was not a licensed driver. After the two boys met their three

friends at the high school and decided to go to the Pizza Hut, the three—John Schloesser, John Roeske, and Robert Treichel—followed in separate cars, one driven by Roeske and one by Schloesser. During the drive, Konkol would occasionally look to the rear to make sure that the other cars were still following. On at least one occasion, Konkol expressed concern whether the Roeske and Schloesser cars could keep up, and Donarski reduced his speed.

During the drive, Donarski passed a vehicle, referred to in the affidavits as the "phantom" vehicle. Before passing, there was an interchange between Konkol and Donarski whether to pass. As Donarski was passing, Konkol told Donarski that he had better speed up to avoid hitting an oncoming vehicle. Donarski "stepped on it," and got back into his lane, barely avoiding a collision with the oncoming car. In doing so, he cut in closely in front of the vehicle he was passing—the "phantom" car.

When Donarski stopped to permit his friends to catch up, Roeske told Donarski and Konkol that Schloesser had been stopped and threatened by the driver of the "phantom" car—the one which Donarski had passed. Donarski and Konkol became concerned that the "phantom" car was looking for them. To get them out of the area, Konkol gave Donarski directions where to turn off the road. Konkol was familiar with the area, and he "thought" that Donarski was not (an undisputed portion of depositions of Anthony Donarski and of his father state that Anthony was familiar with the highway and its adjacent intersecting roads). After Konkol's directions, Donarski turned onto Crowbar Drive in the direction of its intersection with Highway 24. It is undisputed that the "phantom" vehicle was following at this time.

At a point about one-fourth mile from the intersection, Konkol saw the plaintiff's vehicle travelling on Highway 24. He also knew that the speed limit at that point was 35 miles per hour and that Donarski was exceeding it. He knew there was a stop sign to halt traffic approaching on Crowbar Drive. He did not warn Donarski of the approach of the Delmore car on the intersecting highway, nor did he advise Donarski of the stop sign. The affidavit of Donarski's father is again relevant on this question. He states that his son was familiar with the area and knew about the sign. Anthony's deposition acknowledges the same familiarity. Although the attorney for the plaintiff asserts that Donarski was unfamiliar with the area, that assertion is based upon Konkol's statement that he "thought" Donarski was not familiar with the area.

The plaintiff cites the following facts that are asserted to be material and in dispute: (1) Konkol told the driver, Donarski, that he was going to have to accelerate while passing the car, because it would otherwise be a close call; (2) the defendant functioned as a lookout, because he looked back from time to time and told Donarski whether the friends were still following; and (3) Konkol functioned as a navigator, because about two miles from the accident scene he told Donarski he could get out of the area by turning.[2]

A review of all the affidavits reveals that there is no disputed material fact. The only dispute in respect to the three "issues" stated above is not of fact, but, rather, of the characterization or effect of the passenger's conduct. These do not pose fact issues.

---

[2] It is also asserted that there is an issue of fact in respect to whether Konkol negligently performed the duties he undertook (to control and manage the car) and whether such negligence caused the accident. In view of the fact that we find no such assumption of management, we do not discuss these additional "factual" issues.

The only fact that conceivably could be considered to be disputed is in respect to whether Donarski was familiar with the area approaching the collision scene and the collision scene itself. Putting aside how material a fact that is, Konkol only asserted that he did not "think" Donarski was familiar with the area. Donarski and his father both stated that he was familiar with the area, and the father stated that his son should have known there was a stop sign at the intersection. There was thus no dispute about the younger Donarski's familiarity with the area.

Thus, the facts are undisputed. Nevertheless, summary judgment should not be granted if reasonable, but differing, inferences can be drawn from the undisputed facts. *Jones v. Sears Roebuck & Co.*, 80 Wis. 2d 321, 325, 259 N.W.2d 70 (1977). Hence, one must determine whether, from the undisputed facts, reasonable persons could reach different inferences. *Maynard v. Port Publications, Inc.*, 98 Wis. 2d 555, 563, 297 N.W.2d 500 (1980).

Here it is contended that, inferentially at least, the conduct of Konkol was equivalent to the assumption of the duties as a driver of the vehicle in which he was a passenger in respect to management, control, and lookout. We deem that inference unreasonable and conclude that Konkol was acting only as a passenger.

In respect to the first of the items which the plaintiff has identified as an issue of material fact, there is no evidence from the affidavits that Konkol's course of conduct was to tell, direct, or command Donarski to speed up to avoid a collision. He did not direct Donarski when to speed up or slow down. What did happen was merely an isolated incident, when an individual in the role of a passenger would naturally express concern that, unless they completed the pass with sufficient rapidity they would be participants in a head-on collision. This is an

expression of concern for the passenger's own safety. There was no evidence of any agreement or pattern of performance which would show that Konkol had taken over the function of routinely advising or directing Donarski.

While the plaintiff has presented this court with a finely crafted brief on the legal issues, it is far-fetched to assert that, because Konkol looked to the rear occasionally so he could report whether the friends were still following, he assumed the duty of lookout that is ordinarily the driver's. This observation to the rear was for a limited and very clearly defined purpose. It had not at all to do with the safety of the car's operation or with any maneuvers that could cause an accident. It was concerned only with making sure that the following friends ended up at the intended common destination, the Pizza Hut. There is absolutely no evidence that Donarski relinquished his duty to look ahead or about him in the operation of the vehicle. It is unreasonable to infer that, because a passenger looked to the rear to make certain the two friends were following, Konkol had assumed any of the duties of the driver.

The third disputed material issue of fact allegedly is that, by telling Donarski to turn onto Crowbar Drive, Konkol assumed the duty as navigator. The relevance of this is not clear, even if the statement is correct. We cannot conclude that, because a passenger informs a driver of the best route to follow or reads a map, by so doing there is any assumption of the duties of management or control.

In this case, it also should be remembered that the evidence is that Donarski was familiar with the area. There is not the slightest doubt that he knew his way to the Pizza Hut, and there is no reason, based on the evidence, to infer—even were the fact relevant—that the

turn-off would not have been taken but for the suggestion of Konkol.

There is no dispute, even inferentially, in respect to a material issue of fact. To make a determination on the basis of the facts found in the affidavits supporting a motion for summary judgment would deprive neither party of its right to trial on the facts.

As stated above, however, summary judgment is only appropriate when one party or the other is entitled to judgment as a matter of law.

While this court has never been presented with a case on all fours with the present one, the contour of the law is clear—where a passenger's lack of ordinary care is in respect only to his or her own safety, there can be no liability to third persons. The general rule was formulated in terms of "passive" and "active" negligence as early as *McConville v. State Farm Mut. Auto. Ins. Co.*, 15 Wis. 2d 374, 385, 113 N.W.2d 14 (1962). It was there discussed in connection with the court's changed view that "assumption of risk" was not necessarily a matter of consent by a guest, but rather a matter of the guest's contributory negligence. *McConville* recognized that the negligence of a guest may be of two kinds: Negligence that was only the cause of the guest's injuries and negligence which may be a cause of the accident. "Active negligence of a guest may be a cause of the collision and consequently a cause of his injuries." P. 385.

Only ten months later, the language of *McConville* was modified, and the present formulation of passive and active negligence was adopted:

"Some question has been raised by the use of the terms 'active negligence' and 'passive negligence' in *McConville*—terms which have heretofore been used in legal jurisprudence. By the term 'passive negligence' we in-

clude conduct of a guest in failing to use ordinary care for his own safety in entering the car or in riding with the host when knowing of a hazard, whether the hazard be a condition of the car, the condition of the driver, his lack of skill, or any other hazard. Such negligence may contribute to or be a cause of the guest's injury or may not, depending upon the facts of the accident and the conduct of the host, but such negligence is not a cause of the collision or the accident. In such a case, the collision or accident may be termed the immediate cause or conduit through which the negligence of the host or other driver, or both, causes the injuries to the guest. If a cause of the accident is related to the hazard in respect to which the guest was negligent, such passive negligence of the guest is a contributing cause of his injuries. Active negligence on the part of the guest in failing to exercise ordinary care for his own safety consists of his acts or omissions which directly may be a cause of the accident or collision, *e.g.*, interference with the operation of the car or its operator.

"Lookout and failure to warn on the part of a guest may in exceptional cases be a substantial factor or a cause of the collision or accident but ordinarily such negligence is not, although it may be a cause of his injuries, as the jury found in this case. The test of the guest's negligence is whether under the circumstances he acted with the care a reasonably prudent man would have used under the circumstances. His negligence so determined is based on his duty to use ordinary care as a guest under the circumstances for his own safety. A guest's duty of lookout is for his own safety; it is not owed to the operator of the car or to third persons. He may assume the host-driver understands and appreciates better than he the control the host has over the car and that he will not operate it in a negligent manner." *Theisen v. Milwaukee Automobile Mut. Ins. Co.*, 18 Wis. 2d 91, 105–06, 119 N.W.2d 393 (1963).

Justice Hallows in *Theisen* also made it clear that the duty of a guest was the same as the duty of any person —ordinary care in the circumstances, that the circumstance of a guest is different than that of a driver, and

that ultimately what is "active" and what is "passive" is a matter of causation—did the negligence, if negligence there were, cause the collision or only cause the injuries to the guest.

*Theisen* also clarifies the functional nature of the difference between active and passive negligence in terms of the findings that a jury must make. The court stated:

> "In such a case the inquiries relating to the cause questions of negligence of the host and other driver could be stated *in terms of causing the collision* and also, if it is in the case, the question of the guest's active negligence. The question concerning the guest's passive negligence would be stated only *in terms of causing his own injuries* and not also of causing the collision." (Emphasis supplied.) P. 107.

"Passive" and "active" negligence was further clarified in *Vroman v. Kempke*, 34 Wis. 2d 680, 685, 150 N.W.2d 423 (1967). Therein, the court, again speaking through Justice Hallows, said:

> "[W]hether negligence is active or passive is not determined by whether the acts were of commission or omission but whether they were a cause of the accident or only of injuries."

Following *Vroman,* logic then would clearly lead to the conclusion that active negligence—negligence that in part or in whole caused the accident—could lead to the liability of a guest in one car to the occupants of another car, as well as to liability to the guest's host.

All of the Wisconsin cases emphasize that the negligence test to be applied to a guest is the usual one: Was there a lack of ordinary care in the circumstances. This will always place a different onus on the guest than on the driver, for the circumstances by which the negligence

of a guest is to be judged is different than that for the host driver.[3]

The court had occasion again to examine the distinction between active and passive negligence in *Dutcher v. Phoenix Ins. Co.*, 37 Wis. 2d 591, 155 N.W.2d 609 (1968), and cited with approval Justice Hallows' formulation in *Theisen*. In *Dutcher*, the alleged active negligence was that "Gurney [the guest] grabbed the steering wheel immediately prior to the accident" (p. 602) and caused the accident. However, the court found the evidence in this respect was equivocal and, hence, no jury question was appropriate. The court also found that, by failure to timely request an instruction in respect to the "grabbing of the wheel," the right to the instruction was in any case waived. It is clear, however, that, had there been sufficient evidence and a timely request for an instruction, the court considered such an instruction appropriate in a situation where a guest by active negligence interfered with the operation of the vehicle and "caused" the collision.

Based on *Theisen* and *Dutcher*, the Civil Jury Instruction Committee properly adopted Wis. JI—Civil 1047.1:

"1047.1    Negligence of Guest: Active: Management and Control
"The management and control of a motor vehicle is the duty and responsibility of the driver alone. Should a guest passenger, by physical action on his part, interfere with the management and control of the driver, or should he by any other action distract the driver from his duties of management and control, the guest passenger is then negligent as that word previously has been defined for you."[4]

---

[3] A passenger is not held to the same degree of care with respect to lookout as is the driver. *Sulkowski v. Schaefer*, 31 Wis. 2d 600, 143 N.W.2d 512 (1966). *E.g.*, a passenger may assume that a driver will stop at a stop sign. *Lewis v. Leiterman*, 4 Wis. 2d 592, 91 N.W.2d 89 (1958).

[4] The comments to the instruction point out that:

"Active negligence, such as grabbing the steering wheel, Dutcher v Phoenix Ins Co, *supra*, must be distinguished from passive

Following *Theisen* and *Dutcher*, the court decided *Hoeft v. Friedel*, 70 Wis. 2d 1022, 235 N.W.2d 918 (1975), which involved a driver who was not licensed but had a temporary permit to drive with a licensed driver under certain circumstances. Friedel lost control of the vehicle while accompanied by Hoeft, a licensed driver. The question was the basis of Hoeft's liability, if any, for Friedel's loss of control.

The court, relying on the *Dutcher* rule, held that a jury instruction in respect to active negligence was warranted by the evidence:

"Where the passenger assumes some part of the driver's duties or, in some way, interferes with the safe operation of the motor vehicle, his negligence is 'active'—causal not only of his injuries, but also of the collision." P. 1037.

In *Hoeft*, the evidence was that, as Friedel drove, Hoeft explained to her "how to shift, how to clutch, and how to operate the accelerator." (P. 1037) He coached her as she drove and watched to see that she was steering properly, maintaining a proper speed, and keeping an appropriate lookout for other vehicles.

Under these circumstances, said the court, a jury question was presented in respect to the active negligence of the passenger—the passenger's independent duty and obligation to exercise reasonable care under the circumstances for the course of conduct undertaken. It was error for the trial court to instruct the jury that, in these circumstances, it was to consider only conduct that was passive negligence.

negligence, such as accompanying an intoxicated or incompetent driver, McConville v State Farm Mut Ins Co, 15 Wis 2d 374, 113 NW2d 14 (1962); negligence of a guest with respect to lookout, Romberg v Nelson, 8 Wis 2d 174, 98 NW2d 379 (1959); and negligence with respect to a guest's duty to warn, Teas v Eisenlord, 215 Wis 455, 253 NW 795 (1934)."

*Vroman v. Kempke, supra,* involved only passive negligence, but in the course of reiterating the "passive-active" dichotomy, the court stated, in dicta, that a verdict in which the guest's negligence was to be assessed as a portion of the 100 percent negligence causing an accident:

". . . would be correct in the rare case where the negligence of the passengers was active in the sense it contributed with the host's negligence to the accident and thus each party could be considered to be a tort-feasor as against the other parties." P. 684.

Other cases, *e.g., Theisen,* p. 106, hinted at the holding that active negligence of a passenger could be the basis for liability to third persons when it contrasted passive and active negligence and stated, "A determination of the guest's negligence for his own safety is not a basis of liability to third persons."

Thus, it seems clear that the logic of the cases cited, the progression of them, and the uniform rationale that negligence of a guest which is active constitutes a cause of an accident leads inevitably to the conclusion that a guest passenger may be liable to third parties—including passengers in another automobile.

In the instant case, however, the negligence, if any there was, was not "active." Konkol assumed no part of the *driver's* duties of management and control. He at no time interfered with the management and control of the car. While in the rare case there can be active negligence for failure to warn a driver to keep a proper lookout, such was not the case here.

The plaintiff asserts that this is the exceptional or rare case in which the defendant-passenger's failure to warn or look out constitutes active negligence. A passenger is not held to the same degree of care with respect to look-

out that is required of the driver. *Hoeft, supra; Davis v. Allstate Ins. Co.,* 55 Wis. 2d 56, 197 N.W.2d 734 (1972) ; *Sulkowski v. Schaefer,* 31 Wis. 2d 600, 143 N.W.2d 512 (1966) ; Wis. JI—Civil 1075. If the passenger sees a danger and it is apparent that the driver does not see the danger, the passenger has a duty to warn. *Teas, supra;* Wis. JI—Civil 1076. There is no duty, however, upon the passenger with reference to the manner in which the car is momentarily managed. *Theisen, supra; McConville, supra; Goehmann v. National Biscuit Co.,* 204 Wis. 427, 235 N.W. 792 (1931) ; Wis. JI—Civil 1047. In fact, a passenger has a right to assume that a driver will obey a stop sign. *Lewis v. Leiterman,* 4 Wis. 2d 592, 598, 91 N.W.2d 89 (1958). The affidavits revealed that the driver, Donarski, had as much reason to know that there was a stop sign at the intersection as did Konkol—not only because he was as able to see the stop sign as Konkol, but also we know from the affidavits that Donarski was familiar with the intersection.

The case law of Wisconsin instructs us that only in the exceptional case can a finding of active negligence be appropriate. One such case—arguably at least—was *Hoeft v. Friedel, supra,* where there was evidence that would have warranted a jury question in respect to active negligence. There was a complete assumption of control by the guest. He took it upon himself to instruct and dictate every phase of management, control, and lookout. It should be stressed, however, that nothing in *Hoeft* purports to determine that Hoeft was in fact negligent in his active management of the entire driving operation. That was a question for the jury. The case, however, is instructive in highlighting, in the absence of physical interference by a guest, the completeness with which there must be a take-over of the driver's prerogatives. Contrasted to that is the situation posed in *Dutcher,* where

the passenger allegedly grabbed the steering wheel and caused the accident by that active negligent conduct.

This is not the exceptional case warranting a finding of active negligence. Konkol was conducting himself only as a passenger. Whether he was guilty of passive negligence in that role is not an issue here. None of the undisputed facts, though believed, rise to the level of active negligence. Hence, on the basis of the undisputed facts and the applicable law, we conclude that the motion of the defendants for a summary judgment dismissing the plaintiff's complaint against the passenger was appropriate.

We have also examined the plaintiff's alternate theories of liability, agency, joint venture, and mutual understanding analogous to a drag race. We find them inapplicable to the undisputed material facts. While the plaintiff has cited at least one case from another jurisdiction which found a passenger liable to third parties for his negligence, that case is based on facts that in Wisconsin would be denominated as active negligence by the passenger. *See, Adams v. Morris,* 584 S.W.2d 712 (Tex. Ct. Civ. App. 1979). The Texas court's holding sustaining liability is not inconsistent with the rationale of our cases. The facts of *Adams* demonstrate that the passenger, the owner of the car, distracted the driver by directing him to wipe up a spilled can of Coca Cola. These facts of active negligence—the interference with the driving function—are not in any way similar to the undisputed facts here. We ratify the plaintiff's theory of liability of a guest to third parties for active negligence as being consistent with a twenty-year course of Wisconsin case law, but the facts here do not fit the theory. The conduct alleged is not active negligence.

We do not intend to closely delimit the facts under which a passenger can be found actively negligent. The test is whether the passenger breached a duty of ordinary

care under the circumstances and whether that negligence was the cause of the accident. The possible fact situations which could be denominated as active negligence of a passenger under this test are almost as broad as the fact situations that will dictate ordinary negligence in other circumstances, but it must be remembered that the circumstances by which a passenger is to be judged negligent or not—actively negligent or not—are circumscribed by his status as a passenger.

Here, on the undisputed facts, we hold that, under existing law, the passenger's conduct was not active negligence that caused the accident. The court of appeals appropriately affirmed the judgment of the circuit court.

*By the Court.*—Decision affirmed.