Bryan D. NELSON, a minor, by John D. Hibbard, Guardian ad Litem, Paul M. Gustafson, and Ann M. Gustafson, Plaintiffs-Appellants,

v.

NELSON HARDWARE, INC., and Hartford Casualty Insurance Co., Defendants-Third-Party Plaintiffs-Respondents, †

David D. NELSON, and State Farm Fire & Casualty Company, Third-Party Defendants.

Court of Appeals

*No. 89–1099–FT. Submitted on briefs August 21, 1989.—Decided November 7, 1989.*

(Also reported in 450 N.W.2d 491.)

† Petition to review granted.

For plaintiffs-appellants there were briefs submitted by *Eric J. Wahl* of *Wiley, Rasmus, Wahl, Colbert, Norseng & Cray, S.C.,* of Eau Claire.

For defendants-third party plaintiffs-respondents there was a brief submitted by *Susan M. Zabel* of *Coe, Dalrymple, Heathman & Coe, S.C.,* of Rice Lake.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Bryan D. Nelson, a minor, and Paul and Ann Gustafson, his mother and stepfather (Nelson), appeal a summary judgment dismissing their amended complaint against Nelson Hardware, Inc., and its

insurer, Hartford Casualty Insurance Co.[1] Nelson sued the hardware store for damages after his hand was injured when a used shotgun purchased from the hardware store accidentally fired. The trial court ruled that strict liability does not apply to used products and that Nelson failed to demonstrate facts to support a claim for negligence. We conclude that a strict liability claim is not precluded solely because the product had been sold used, and that a genuine factual dispute exists as to the hardware store's negligence. Accordingly, we reverse and remand for further proceedings consistent with this opinion.[2]

Nelson, age fourteen, injured his hand while hunting pigeons and sparrows with a Stevens twenty-gauge model 920E single-shot shotgun. After Nelson observed a pigeon fly into a barn, he placed a shell in the chamber, entered the barn, and began climbing a ladder with the gun in his hand to reach the loft. The shotgun was uncocked. When Nelson approached the loft, he reached up and placed the shotgun in a leaning position on a board against the ladder. As he continued climbing, the gun slipped and fell butt-first to the barn floor and discharged into his hand. Nelson brought this action based on the alternative theories of strict liability and negligence.

The hardware store moved for summary judgment based on the affidavit of the hardware store's general manager, which stated that it sold new guns and used guns taken in trade, and that in September, 1982, the

---

[1]Also named as defendants are Savage Industries, Inc., and its insurance company, but Savage has filed bankruptcy proceedings and is not a party to this appeal. Bryan Nelson is no relation to the defendant hardware store although they have the same name.

[2]This is an expedited appeal pursuant to Rule 809.17.

store took in trade the shotgun later purchased by Nelson's father. The manager visually inspected the used shotgun and observed no apparent defects. The manager asserted that he made no representations or warranties concerning safety to the father when he purchased the gun in 1983.

Nelson opposed the summary judgment motion based on his firearm expert's opinion that the firearm was manufactured in the 1970's, that there was no evidence that the gun had been modified since its manufacture, and that the gun was defective as designed or manufactured. His specific criticism was that the safety mechanism permits the uncocked gun to be fired when dropped on its butt from only twelve inches. He testified that it fired every time when dropped twelve inches or more on a rubber mat. He had never heard of any other gun firing in an uncocked position and stated that a gun as dangerous as this one should have a warning stamped on the gun. His summary comments were:

> The examination and testing of this gun indicates that the gun is UNREASONABLY DANGEROUS to the user and others in the vicinity of the user. There is little excuse for the marketing of a gun that will unexpectedly fire when dropped on the butt from a distance of only 10" while uncocked and engaged in the safety mode. The rebound safety is also defective to prevent the firing due to an accidental blow to the hammer spur. The manufacturer does nothing to warn of these problems. The gun is a trap to the unwary.

Wisconsin has adopted sec. 402A, Restatement (Second) of Torts (1965), providing for strict liability of a seller of a product in a defective condition unreasonably dangerous to the user. *Dippel v. Sciano,* 37 Wis. 2d

443, 460, 155 N.W.2d 55, 63 (1967). To recover, a plaintiff must show

> (1)   that the product was in defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it.

*Id.* Wisconsin has never applied sec. 402A to a seller of used products and declined to do so in *Burrows v. Follett & Leach, Inc.,* 115 Wis. 2d 272, 279, 340 N.W.2d 485, 489 (1983). *Burrows,* however, involved the sale of a 1949 used corn picker missing its power takeoff shield at the time of sale. The purchaser was aware the shield was missing so that the dangers of a rapidly rotating drive shaft were obvious and well-known. *Id.* at 285, 340 N.W.2d at 492. The purchaser's son suffered severe injuries as a result of becoming entangled in the unguarded portion of the takeoff shaft. *Id.* at 277, 340 N.W.2d at 488.

In *Burrows,* our supreme court observed that jurisdictions were divided as to sec. 402A's application to a seller of used products, and concluded that sec. 402A should not be applied to the obviously defective used corn picker.[3] *Id.* 283–85, 340 N.W.2d at 491. The court reasoned that no express representations as to the corn

---

[3]A summary of the different results reached in other jurisdictions can be found in Annotation, *Strict Liability in Tort: Liabil-*

picker's safety were made, the defect was in plain view and was in fact observed by the buyer at the time of purchase. Its dangers were obvious and well-known. The court also reasoned that common-law negligence rules more equitably served the policy of compensating persons injured by obviously defective used products, and, under the facts of the case, strict liability was inapplicable. *Id.* at 285, 340 N.W.2d at 491–92.

Unlike the facts in our case, the defect in *Burrows* was apparent and its danger was well-known to all parties. There was no design or manufacturing defect undetected by the purchaser. Rather, the used equipment was damaged or modified subsequent to manufacture.

Courts are reluctant to impose liability when the danger or potential for harm is readily apparent to the user. *Cf. Delvaux v. Ford Motor Co.,* 764 F.2d 469 (7th Cir. 1985) (a convertible automobile); *Vincer v. Esther Williams All-Alum. Swim. Pool Co.,* 69 Wis. 2d 326, 230 N.W.2d 794 (1975) (swimming pool); *Collins v. Ridge Tool Co.,* 520 F.2d 591 (7th Cir. 1975) (cutting tool). In defining unreasonably dangerous, our supreme court has remarked: "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Arbet v. Gussarson,* 66 Wis. 2d 551, 557, 225 N.W.2d 431, 435 (1975) (quoting Restatement (Second) of Torts, sec. 402A, comment i (1965)). Because the dangers of the corn picker missing the power takeoff shield were readily apparent to the user, the corn picker would not have been unreasonably dangerous under this definition.

---

*ity of Seller of Used Product,* 53 A.L.R.3d 337 (1973 & Supp. 1989).

■While we agree with policy reasons that preclude sec. 402A's application for defects arising after the product has been manufactured and sold, *Burrows,* 115 Wis. 2d at 280–83, 340 N.W.2d at 489–91, that is not the case here. The evidence presented here showed that the shotgun was not modified since its manufacture, and that the defect was unobserved by both the buyer and the seller. According to the affidavit presented, the defect was not the result of the product becoming worn, used, or damaged.

In contrast to *Burrows,* here no evidence exists that the buyer and seller were aware of the defective safety mechanism. Rather, the record reveals that Nelson's father would testify that the hardware store advised him that the shotgun was a "good gun for a beginner."[4] We conclude that the fact that the gun had changed hands prior to its sale does not preclude the imposition of strict liability, in this case, where there was no obvious defect or dangerous condition; the product was not modified, damaged, or worn, and the parties to the sale had a reasonable expectation that the shotgun was safe for its intended purpose.

We note that the plain language of sec. 402A does not limit itself to new products but applies to "any product." Also, policy reasons that justify strict liability are equally applicable here.

The three often cited justifications for the rule of strict liability for defective products are: "Compensation

[4]The trial court discussed a breach of warranty claim; however, this claim was neither pled before the trial court nor pursued on appeal. Accordingly, we assume Nelson has abandoned any cause of action based on warranty, although evidence concerning warranties may be relevant to his claims in strict liability and negligence.

(ability to spread the risk), satisfaction of the reasonable expectations of the purchaser or user (implied representational aspect), and over-all risk reduction (the impetus to manufacture a better product)." *Burrows,* 115 Wis. 2d at 281, 340 N.W.2d at 490 (quoting *Fulbright v. Klamath Gas Co.,* 533 P.2d 316, 321 (Or. 1975)).

These three reasons justify applying sec. 402A to this case. It has been observed that "[d]ealers in used goods are, as a class, capable like other businesses of providing for the compensation of injured parties and the allocation of the cost of injuries caused by the products they sell . . .." *Id.* at 281, 340 N.W.2d at 490 (quoting *Tillman v. Vance Equip. Co.,* 596 P.2d 1299, 1303 (1979)). Also, there is evidence that the defective safety mechanism belied the reasonable expectations of the user in that the gun "will unexpectedly fire when dropped on the butt from a distance of only ten inches while uncocked and in the safety mode." And, although the chances of indemnity from a manufacturer may be diluted in the case of used goods due to the passage of time, a manufacturer would continue to be liable on an indemnification theory, which would create an impetus to manufacture a safer product.

Our conclusion that *Burrows* does not preclude the imposition of strict liability in this instance, however, does not dispose of this case. Our review of summary judgment is limited to whether disputed issues of material fact exist. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Although it is undisputed that the shotgun was purchased used, numerous factual issues remain pertaining to contributory negligence, causation, and whether the product was safe for normal handling. *See Sumnicht v. Toyota Motor Sales,* 121 Wis. 2d 338, 365–68, 360 N.W.2d 2, 14–16 (1984).

Also, Nelson's negligence claim remains. The hardware store complains that it was unaware of the latent defect and performed an adequate visual inspection, and therefore liability should not be imposed. In contrast to strict liability, a negligence claim requires the plaintiff to prove what was done was foreseeably hazardous to someone. *Shawver v. Roberts Corp.,* 90 Wis. 2d 672, 687, 280 N.W.2d 226, 233 (1979). The duty is one of ordinary care, and the failure to exercise ordinary care in performing an act that could foreseeably harm someone constitutes a breach of the duty. *Id.*

Whether the hardware store breached its duty to inspect is dependent on numerous factors not sufficiently developed by affidavit to conclude that no genuine dispute of material fact exists. These factors include whether the seller made representations concerning the product, whether the inspection was adequate for the purpose for which it was undertaken, and whether a reasonable inspection would have revealed the defect. *See* cases cited at Annotation, *Seller's Duty to Test or Inspect as Affecting his Liability for Product-Caused Injury,* 6 A.L.R.3d 12 (1966 & Supp. 1989). Also disputed is whether the hardware store made representations in the course of marketing the gun. Accordingly, summary judgment is not appropriate. *Delmore v. American Fam. Mut. Ins. Co.,* 118 Wis. 2d 510, 516, 348 N.W.2d 151, 154 (1984).

*By the Court.*—Judgment reversed and cause remanded.