DUTCHER and another, Respondents, v. PHOENIX INSURANCE COMPANY and another, Appellants.

*January 4—January 30, 1968.*

592

594

595

For the appellants there were briefs by *Campbell, Brennan, Steil & Ryan* and *James E. Brennan* and *Thomas J. Basting,* all of Janesville, and oral argument by *James E. Brennan.*

For the respondents there was a brief and oral argument by *Philip Weinberg* of Milwaukee.

WILKIE, J.   Six issues are presented on this appeal. They are:

1. Did the trial court improperly deny Britt's affidavit of prejudice?

2. Did the trial court err when it refused to submit active negligence and apportionment questions to the jury concerning Robert Gurney's role in the accident?

3. Did the trial court err when it found Larry Britt negligent as a matter of law?

4. Was the trial court's instruction concerning the immateriality of the purpose of the trip to Beloit improper?

5. Is the $10,000 award for Clarence Dutcher's future loss of earnings excessive?

6. Do appellants' brief and appendix violate the supreme court rules?

### *Affidavit of Prejudice.*

The summons and complaint in this action were served on defendant Phoenix on December 6, 1965.  Phoenix answered and the case was noticed for trial.  The trial was scheduled to begin on June 7, 1966.  Attempts by plaintiffs to personally serve defendant Britt were unsuccessful and service by publication was accomplished on May 20, 1966.  On May 23, 1966, Phoenix substituted present counsel for the attorneys who had represented it up until that date.  Upon request of new counsel, the plaintiffs agreed on June 1, 1966, to postpone the trial until early July.  On June 7, 1966, Britt entered the action via a "notice of appearance" filed on his behalf by the attorneys for Phoenix.  Two days later, the combined defendants asked the court to postpone the trial until September.  The court denied this request and defendant Britt filed an affidavit of prejudice against the judge.

The general rule is that when a proper affidavit of prejudice is filed the trial judge has no jurisdiction to do anything but make a proper order of removal and initiate action for calling in another judge.[1]

Here, however, the affidavit of prejudice was defective because it was not joined in by the codefendant. In *Morris v. P. & D. General Contractors, Inc.*,[2] the plaintiff commenced an action against 17 defendants. One of the defendants filed an affidavit of prejudice and requested a change of venue. On appeal, this court held that the affidavit was defective not only because it was not timely filed but also because it was not joined in by all the defendants on the same side.

Again, this court in *Will of Rice*[3] held that all the parties who have appeared and are interested in a controversy constitute one party within the meaning of the statute and must act in harmony when seeking a change of venue grounded on alleged prejudice of the presiding trial judge.

In both *Morris* and *Will of Rice* the affidavits of prejudice were submitted in conjunction with a requested change of venue. In the instant case appellant Britt filed his affidavit of prejudice but sought a new judge and not a change of venue. We see no reason why the nature of the request should make any difference and we conclude that Britt's affidavit of prejudice was defective for not being joined in by the other defendant and that his request was properly denied.

Furthermore, it is patently apparent that the affidavit in this case was filed for purposes of delay. While this

[1] *Luedtke v. Luedtke* (1966), 29 Wis. 2d 567, 569, 139 N. W. 2d 553; *Schwanke v. Reid* (1962), 16 Wis. 2d 521, 524, 114 N. W. 2d 845; *Woods v. Winter* (1948), 252 Wis. 240, 247, 31 N. W. 2d 504; *Wisconsin Co-operative Milk Pool v. Saylesville Cheese Mfg. Co.* (1935), 219 Wis. 350, 353, 263 N. W. 197.

[2] (1941), 236 Wis. 513, 295 N. W. 720.

[3] (1912), 150 Wis. 401, 455, 136 N. W. 956, 137 N. W. 778.

is not a ground for denial of a change of venue or trial judge, it is a procedure which cannot be approved.[4]

*Active Negligence Question.*

In respect to Dutcher's claim the defendants contend that the trial court should have submitted a question in the special verdict inquiring whether or not Robert Gurney was guilty of active negligence by interfering with the operation of the vehicle. They argue that a "yes" answer to this question would necessitate a further question comparing the negligence of Gurney and Britt in causing Dutcher's injuries.

Active negligence, as opposed to passive negligence, was explained by Mr. Justice HALLOWS in *Theisen v. Milwaukee Automobile Mut. Ins. Co.,*[5] wherein it is stated that:

". . . By the term 'passive negligence' we include conduct of a guest in failing to use ordinary care for his own safety in entering the car or in riding with the host when knowing of a hazard, whether the hazard be a condition of the car, the condition of the driver, his lack of skill, or any other hazard. Such negligence may contribute to or be a cause of the guest's injury or may not, depending upon the facts of the accident and the conduct of the host, but such negligence is not a cause of the collision or the accident. In such a case, the collision or accident may be termed the immediate cause or conduit through which the negligence of the host or other driver, or both, causes the injuries to the guest. If a cause of the accident is related to the hazard in respect to which the guest was negligent, such passive negligence of the guest is a contributing cause of his injuries. Active negligence on the part of the guest in failing to exercise ordinary care for his own safety consists of his acts or omissions which directly may be a cause of the accident

---

[4] *Morris v. P. & D. General Contractors, Inc., supra,* footnote 2, at page 518.

[5] (1962), 18 Wis. 2d 91, 118 N. W. 2d 140, 119 N. W. 2d 393.

or collision, *e.g.*, interference with the operation of the car or its operator." [6]

If there was an issue of active negligence on behalf of Gurney, then questions inquiring as to the existence of such negligence, its causality, and an apportionment question, should have been submitted to the jury [7] if properly requested.

Initially, it should be pointed out that without introduction of an issue concerning Gurney's active negligence, the special verdict in this case was framed in conformity with the court's recent decision in *Vroman v. Kempke.*[8]

*Vroman* involved an automobile accident out of which grew two separate cases that were consolidated for trial. The defendant's car had left the road and landed in a ditch. Defendant's wife was killed and another passenger injured. The wife's administratrix and the other passenger brought suit. The jury, in answering the lone comparative negligence question, attributed 50 percent active negligence to the defendant and 25 percent passive negligence to each plaintiff. The trial court entered judgment on the verdict allowing each guest-plaintiff to recover 75 percent of her damages from the defendant driver. This court reversed, holding that it was improper to include the passive negligence of the two guest-passengers in the same comparative-negligence question with the active negligence of the host, thus requiring the jury to assume the total of the negligence, active and passive, of all the parties constituted 100 percent.

The jury in the instant case, in separate questions, was asked whether Dutcher and Gurney failed to exercise ordinary care for their own safety and whether such failure was a cause of their injuries. Affirmative answers to these questions required the jury to separately answer

---

[6] *Id.* at page 105.

[7] *Id.* at page 106.

[8] (1967), 34 Wis. 2d 680, 150 N. W. 2d 423.

comparison questions involving the defendant and one plaintiff. As previously stated, the apportionment was 10 percent–90 percent between Dutcher and Britt, and 40 percent–60 percent between Gurney and Britt.

Therefore, without an issue concerning Gurney's alleged active negligence, the verdict's form was entirely proper.

We have serious doubts whether there was credible evidence to warrant a jury determination passing on the question of Gurney's active negligence. Although appellants state that evidence received during the trial indicated that Gurney grabbed the steering wheel immediately prior to the accident, we find no such testimony in the record. In fact, the only testimony elicited in this regard was a statement at the conclusion of Britt's direct examination, where he said:

"And I hit this piece of ice and started to slide, and when I started sliding I hit my brake. And when I hit my brake, instead of stopping me that gave me more speed, because I started going faster on this piece of ice; so I let up on the brake. And I started weaving; and when I started weaving I cut my elbow on that piece of metal.

"Then I hit another dry piece of pavement, and the car started weaving; I hit my brakes, and by the time I hit my brakes I hit another piece of ice; she started turning, and I tried to turn my wheel to make the car come back. Turning the wheel the same way if you slide, the car comes back.

"About that time Robert Gurney goes like this, *and grabbed my arm and he starts for the back seat; and when he grabbed my arm, my arm went down like this, and pulled the car like this, and went right off the road.*

"When we had the wreck Robert Gurney was like this, holding my arm, and Dutcher going toward the back seat; and we hit the tree." (Emphasis added.)

This testimony is equivocal and does not raise a jury question about whether or not Gurney did in fact interfere with Britt's control of the automobile. Even if

there is credible evidence to take the question of Gurney's active negligence to the jury, the trial court was correct in holding that appellants were too late in requesting a jury determination of that question.

True, appellants filed an amended answer one week before trial in which they claimed that Gurney interfered with Britt's control of the vehicle. But when the evidence was all in at the trial, their requested verdict questions did not directly raise the question of Gurney's active negligence. Appellants contend that their request as to question 6 raises the question. That request is as follows:

"Question 6:
"Was the plaintiff Robert Gurney negligent in regard to failure to care for his own safety in any of the following respects?
"(a) By entering and riding in the automobile of the defendant?
"Answer: ―――――――――――
"(b) By interfering with the operation of the defendant's vehicle at and immediately prior to the accident?
"Answer: ―――――――――――"

This requested question is clearly directed at the existence of passive negligence on Gurney's behalf. This is obvious from the question's preface which informs the jury that this query concerns Gurney's negligence in "failure to care for his own safety." The appellants' written requested special verdict also did not include a question that would have compared the negligence of Gurney and Britt in causing Dutcher's injuries.

It is a well-accepted principle that parties to a lawsuit have a distinct obligation to aid in the preparation of special verdicts and to voice objection to questions when the trial court has an opportunity to correct them.[9]

Appellants try to escape the fact that they did not request a comparison question involving Gurney and

[9] *Nimits v. Motor Transport Co.* (1948), 253 Wis. 362, 364, 34 N. W. 2d 116.

Britt by pointing to their abortive attempt to "orally amend" their requested verdict before the case went to the jury. This request came just minutes before closing arguments and submission of the case to the jury. This eleventh-hour request came too late to afford the trial court an opportunity to consider it. We are in complete agreement with the trial judge's memorandum decision wherein he states:

"It is interesting to note that defendants did not provide for such a joint tort-feasor comparison between Britt and Gurney as to Dutcher in their proposed special verdict which was submitted in writing to the court for the first time at the end of the testimony. In fact, the court followed very closely the defendants' proposed written verdict with respect to the ultimate issues.

"It seems scarcely fair to the court to wait until the last minute to submit a proposed special verdict in writing, which the court proceeds to adopt in substance, and then without withdrawing it, orally immediately propose a joint tort-feasor comparison question without explaining exactly how it should be worded and how the other questions and instructions with respect to a guest's ordinary care for his own safety should be adjusted to it. Inasmuch as no surprise to defendants was involved during the trial, the joint tort-feasor theory and its relation to Dutcher should have been submitted in the written proposed special verdict if the court were to give it deliberate consideration."

We find no error by the trial court in failing to include in the special verdict questions which would inquire into Gurney's active negligence and make a comparison between Britt and Gurney as to Dutcher.

*Britt Negligent as a Matter of Law.*

The first question in the special verdict asked whether Britt was negligent in the operation of his vehicle at the time of the accident. The court answered this question "Yes."

On motions after verdict, the defendants moved for a new trial on 18 separate grounds. The court's finding Britt negligent as a matter of law was not one of them. Therefore, as a matter of right this court will not review this alleged error.[10] In our discretion we have reviewed the question and it is clear to us that the court was correct in finding Britt guilty as a matter of law. Indeed it appears to us that appellant must be pressing this point with tongue in cheek for in defense counsel's closing argument to the jury he said:

". . . You will be asked to answer these questions, each of them; and I submit to you that the answer to question 1 has rightfully been answered by the court, yes. That is the negligence of Larry Britt. I submit to you that he was negligent for getting into that car, behind that wheel, under the circumstances that night. That is all there is to it."

## *Jury Instruction.*

As previously stated, Gurney and Dutcher claimed that the purpose of the trip to Beloit was to contact someone who might be willing to purchase rugs from Britt. Britt denied this and claimed that the purpose of the trip was to allow Dutcher to spend some time with a woman.

Prior to trial, plaintiffs' counsel moved the court for an order prohibiting defense counsel from alluding to his theory that the purpose of the trip was to allow Dutcher (a married man) to "shack up" with this woman (a divorcee). The court granted this motion, stating:

". . . the court is prepared to instruct Mr. Brennan and any witnesses at this trial that they are not to allude in any manner, before the jury, to any illicit relations by

[10] *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. 2d 380; *Kincannon v. National Indemnity Co.* (1958), 5 Wis. 2d 231, 238, 92 N. W. 2d 884; *Michalski v. Wagner* (1960), 9 Wis. 2d 22, 29, 100 N. W. 2d 354.

anyone prior to the accident which gave rise to the injury; because the court believes that this would be immaterial to the issues and would be prejudicial so as to require possibly a mistrial and a contempt proceeding.

"Now, I have no objection to the introduction of testimony with respect to visiting a woman. I don't think a man has to explain why he wants to see a girl. Those are his own reasons. And what he does with her is his own business; but the court will not permit any testimony as to what he did with this girl, or what he claims he did with her. Her morals are not an issue in this case, and the court has a responsibility to her as well as to the parties.

"And the court must weigh the respective merits involved in protecting a party whose character does not have to be needlessly defamed. So I don't think we will have any great problem there. If one of them wanted to visit a girl, we can certainly go into that, and how long he was with her, and where they went. But anything that they did with respect to sexual intercourse, or attempted illicit relations, is immaterial and is not involved in this case."

All the other events of the evening, including the number of drinks consumed, the places and persons visited, etc., were fully explored.

Whether or not Dutcher engaged in or expected to engage in sexual intercourse with this woman certainly had no bearing on the real issues involved in this personal injury case. To permit appellants to pursue this collateral matter would have only seriously prejudiced the jury against the alleged adulterer, Dutcher. To dispute this claim would have necessitated a situation tantamount to a trial of a collateral issue.

We have repeatedly held that the conduct of a trial is largely within the discretion of the trial court and its determinations will not be disturbed unless the rights of the parties have been prejudiced.[11] The trial court has not abused its discretion here; in fact, we commend the court for ruling as it did. Furthermore, the defendant

---

[11] *Corti v. Cooney* (1926), 191 Wis. 464, 470, 211 N. W. 274.

was certainly not prejudiced. Despite the court's order the defendants were able to get the prohibited material before the jury. Britt's testimony that he and Gurney left Dutcher alone for an hour with a woman (after Dutcher gave them their "cue") infers that the couple engaged in acts of misconduct suggested by appellants. One need look no further than defense counsel's closing argument where he states "I submit that the real reason that they went to Beloit was for Dutcher's benefit, at Dutcher's request, to see this woman." to find that counsel made his point.

The court's cautionary instruction was entirely proper.

### *Damages.*

Appellants contend that the jury awards of $400 and $10,000 for Dutcher's loss of past and future earnings respectively are excessive. These awards have been approved by the trial court.

The standard of this court's review of damage awards challenged as excessive is that where there is any credible evidence which under any reasonable view supports the jury finding, especially when the award is approved by the trial court, it will not be disturbed on appeal.[12]

As a result of the collision with the tree, Dutcher was thrown forward from the rear seat. He landed between the two front bucket seats, injuring his shoulder and neck.

Doctors Nathan Bear and Paul Odland both testified that Dutcher suffered permanent back injuries stemming from a fracture of the third dorsal vertebra. The doctors also agreed that the disability would always curtail Dutcher's ability to do heavy work, including lifting.

---

[12] *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 82, 152 N. W. 2d 911; *Metcalf v. Consolidated Badger Co-operative* (1965), 28 Wis. 2d 552, 561, 137 N. W. 2d 457; *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. 2d 487, 489, 120 N. W. 2d 692.

Dutcher is in the business of buying and selling feeder pigs. This occupation necessitates his driving a truck through the northern part of the state and purchasing pigs from farmers. He must lift the pigs and load them on his truck. Dutcher testified that the weight of the pigs ranged from 35 to 150 pounds and that he can no longer lift them because of his back injuries.

The record indicates that Dutcher's income for the years 1961 to 1964 ranged from around $2,500 to over $5,300. In 1965 his income dropped over $800 to just over $4,500. That loss of income in 1965 was attributed to the fact that in that year he sold 873 fewer pigs than in 1964. Dutcher attributed the decreased pig purchases to the fact that he could no longer load the pigs on his truck by himself. Dutcher's inability to load his trucks necessitated his entering into an arrangement with his nephew whereby the nephew helps load the truck in exchange for one half the space for his own pigs. This arrangement reduces the number of pigs that Dutcher can carry home on any one trip.

Viewing the evidence in the light most favorable to the plaintiff,[13] the jury award of $400 for past wage loss should be sustained.

As to the award of $10,000 for future loss of earnings, considering the jury award of $400 for loss of earnings from the date of the accident to the October, 1966 trial, and extending this loss over his life expectancy (Dutcher is forty years old and has a life expectancy of twenty-eight years) his loss of earnings would be computed to much less than the jury's award of $10,000. But in figuring future loss of earnings the jury is not limited to such mathematical computations based on loss of past earnings. The proper test is "whether the plaintiff's *capacity* to earn has been impaired, although the comparison of the earnings after the accident as compared to the earnings before the accident is some evidence of earning ca-

[13] *Kincannon v. National Indemnity Co., supra,* footnote 10, at page 233.

pacity." [14] In view of the evidence as to the permanent injuries to Dutcher's back and the impairment of his back use, we conclude that there is credible evidence supporting the jury's award on this item of damages.

*Violation of Supreme Court Rules.*

Sec. (Rule) 251.34 (5) (c), Stats., provides that the appendix of the appellant shall contain:

"An abridgment of the appeal record, including the transcript, but only so much thereof as is necessary and material to a consideration of the questions involved. . . ."

The defendants-appellants on this appeal have raised issues concerning Dutcher's past and future wage loss and the trial court's admonitions concerning allusions to the alleged illicit sexual relations of Dutcher and a Beloit woman. Yet the appellants neglected to comply with the above-quoted rule by not including an abridgment of all the significant parts of the transcript germane to those issues. This violation of the rule has forced the respondents to undergo considerable additional effort and expense in the defense of this appeal.

This court has stated in *Lindahl v. Lindahl* [15] that:

". . . The purpose of this rule is to enable us in the limited time available to give due consideration to all the cases presented to us. *Dziengel v. Dziengel* (1955), 269 Wis. 591, 70 N. W. (2d) 21."

In *Peterson Cutting Die Co. v. Bach Sales Co.*[16] it is said:

---

[14] *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 608, 148 N. W. 2d 65; *see also Boodry v. Byrne* (1964), 22 Wis. 2d 585, 594, 126 N. W. 2d 503; *Reinke v. Woltjen* (1966), 32 Wis. 2d 653, 659–661, 146 N. W. 2d 493.

[15] (1963), 19 Wis. 2d 379, 384, 120 N. W. 2d 142, 121 N. W. 2d 286.

[16] (1955), 269 Wis. 113, 118, 68 N. W. 2d 804.

"The volume of work to be done by this court does not leave time for the justices to search the original record for each one to discover, if he can, whether appellant should prevail. An appendix conforming to Rule 6 [now Rule 251.34] makes readily available to each justice the matters which he must know if he is to give intelligent attention to the issues presented by the appeal. It is counsel's duty to the court as well as to his client to furnish it, . . ."

Where a respondent has printed a supplemental appendix when an appellant has neglected to comply with the rule, double costs have been allowed.[17]

The inadequacies of appellants' appendix are such that in the exercise of discretion this court shall allow plaintiffs-respondents double costs.

*By the Court.*—Judgment affirmed. Double costs on this appeal allowed to plaintiffs-respondents.

[17] *Martinson v. Brooks Equipment Leasing, Inc.* (1967), 36 Wis. 2d 209, 152 N. W. 2d 849; *Seifert v. Milwaukee & Suburban Transport Corp.* (1958), 4 Wis. 2d 623, 91 N. W. 2d 236; *Nothem v. Berenschot* (1958), 3 Wis. 2d 585, 89 N. W. 2d 289; *National Farmers Union Property & Casualty Co. v. Maca* (1965), 26 Wis. 2d 399, 132 N. W. 2d 517.