STATE of Wisconsin, Plaintiff-Respondent,

v.

Philip R. BONS, Defendant-Appellant.

Court of Appeals

*No. 2006AP1625–CR. Submitted on briefs February 15, 2007.
—Decided March 14, 2007.*

2007 WI App 124

(Also reported in 731 N.W.2d 367.)

229

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Vladimir M. Gorokhovsky* of *Gorokhovsky Law Office, LLC*, Glendale.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel J. O'Brien*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J.    Philip R. Bons appeals from a judgment of conviction for possession of child pornog-

raphy in violation of WIS. STAT. § 948.12(1m) (2003–04).[1] He contends that the circuit court erred when it denied his motion to suppress evidence collected during a search of his vehicle following a traffic stop. We disagree and affirm the judgment of conviction. We further sanction Bons' attorney, Vladimir M. Gorokhovsky, for falsely certifying to this court that the appendix to his brief-in-chief complied with the requirements of WIS. STAT. RULE 809.19(2)(a) (2005–06).

¶ 2.  The relevant facts are taken from the suppression hearing. Late in the evening on July 19, 2004, Mike Ramstack, an officer with the Chenequa Police Department, was "running radar" when he clocked Bons' vehicle at fifty miles per hour in a thirty-five-mile-per-hour speed zone. Ramstack pulled Bons over and initiated contact with him. According to Ramstack, Bons was "very fidgety and appeared nervous but was cooperative." Bons gave Ramstack his driver's license, and when Ramstack advised him that he had exceeded the speed limit by fifteen miles per hour, Bons apologized and indicated he was on his way home to Hartford. As Ramstack spoke with Bons, he noticed a shot glass "sitting in between the passenger seat and the driver's seat on the emergency brake area." Ramstack inquired about the shot glass and Bons explained that he had a party on a different evening and had forgotten to take it out of the car.

¶ 3.  Ramstack advised Bons he was going to issue him a speeding ticket and returned to the squad car. Ramstack ran a check on Bons' driver's license and discovered that it was suspended and that Bons had two

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

prior offenses. Ramstack then called for backup, which arrived while he was completing a second citation for operating while suspended.

¶ 4. When Ramstack returned to speak with Bons, Ramstack asked Bons to step outside and go to the rear of the vehicle so that he could explain the citations. Ramstack testified that he asked Bons to exit the vehicle in part because Bons would not be able to drive on a suspended license and Bons' nervous behavior and the shot glass had aroused his suspicions. Bons complied, but before doing so, he rolled up the windows and locked the doors. Ramstack considered this "very unusual behavior." However, Bons testified that he locked the doors and rolled up the windows because he believed he was going to be arrested for driving on a suspended license, something that had happened on at least one previous occasion.

¶ 5. Ramstack and Bons walked to the rear of the vehicle. Ramstack told Bons that he would have to make some type of arrangements to be picked up and have the vehicle moved since he could not drive due to the suspension. Ramstack's and Bons' versions of the events diverge at this point.

¶ 6. Ramstack testified that after giving the citations to Bons and returning his driver's license, he asked Bons "if he had anything inside the vehicle that shouldn't be in there." Bons replied, "No." Ramstack asked Bons if he could search the vehicle, specifically the interior or passenger compartments, and Bons said, "Yes." Ramstack thought that, given the presence of the shot glass and Bons' nervous behavior, Bons may have been driving with open containers of intoxicants. Ramstack asked Bons if he could have the keys to the vehicle and Bons said, "[S]ure."

¶ 7. While searching the vehicle, Ramstack noted "laying on the back seat out in the open there were some photographs of some what appeared to be young girls . . . naked . . . laying out on top of a whole stack of other photographs . . . ." Bons told Ramstack that the photographs were part of a business he was trying to start and that all of the subjects were over the age of eighteen. Ramstack asked Bons if there was anything in the trunk that "shouldn't be in there" and Bons told him, "No." Ramstack then asked Bons if he could search the trunk. Bons replied, "[O]h, I guess I don't have a choice." Ramstack reminded Bons that "he did have a choice, he could either tell me yes or no, at which point . . . he did open the trunk himself for me." Ramstack found more photographs of what he thought were girls under the age of eighteen, a camera, rolls of film and women's clothing.

¶ 8. Richard Vanderwerker, the backup officer, also testified to the circumstances surrounding Ramstack's request to search. Vanderwerker confirmed Ramstack's testimony that Bons told him that he could conduct the search of the vehicle and the trunk.

¶ 9. Bons, on the other hand, testified that after he exited the vehicle, Ramstack immediately asked if he could search the vehicle and never gave him the citations. Bons, who admitted he was extremely nervous at the time, informed Ramstack that he was "not comfortable" with the search. Ramstack told him that he could be arrested for operating while suspended and again asked if he could search the vehicle. Bons responded, "I'd prefer you don't." After Ramstack pressed him further, Bons responded, "[D]o what you're going to do." At this time, Bons contacted his parents and told them he needed to be picked up and he thought he was going to be arrested.

¶ 10.   Bons further testified that when Ramstack asked if he could search the trunk, Bons said that he did not feel he had a choice. It was not until after Bons had already started opening the trunk that Ramstack told him, "[Y]eah, you've got a choice." Bons told Ramstack that he still did not think he had a choice.

¶ 11.   Following the hearing, the court determined that Bons had voluntarily consented to the search and denied the motion to suppress. The court rejected Bons' testimony that Ramstack did not give him the citations and that Ramstack told Bons he could be arrested. The court determined that Bons gave Ramstack permission to search the interior of the vehicle and gave him the keys to the vehicle. The court was satisfied that Ramstack told Bons that he had a choice—he did not have to consent to the search of trunk—but Bons opened the trunk anyway. In light of these findings, the court stated that Bons specifically consented to and even facilitated the searches of the interior of the vehicle and the trunk. The court determined that Bons knew he did not have to give consent, but voluntarily chose to do so. Subsequently, Bons pled guilty to one count of possession of child pornography. He now appeals that conviction.

¶ 12.   Bons does not challenge the validity of the initial traffic stop. Rather, Bons maintains that Ramstack unlawfully detained him after the completion of the investigation for the traffic stop, rendering invalid any consent search. *See State v. Jones*, 2005 WI App 26, ¶ 9, 278 Wis. 2d 774, 693 N.W.2d 104, *review denied*, 2005 WI 134, 282 Wis. 2d 720, 700 N.W.2d 272 (stating that a search authorized by consent is wholly valid unless that consent is given while an individual is illegally seized). Bons further argues that, even if the

continued detention was lawful, he did not voluntarily consent to the search of his vehicle.

■■■

¶ 13.   In order to justify an investigatory seizure under the Fourth Amendment, the police must have a reasonable suspicion, grounded in specific articulable facts and reasonable inferences from those facts, that an individual is or was violating the law. *State v. Colstad*, 2003 WI App 25, ¶ 8, 260 Wis. 2d 406, 659 N.W.2d 394. The violation may be of either a criminal law or a noncriminal traffic law. *See id.*, ¶ 13. The question of what constitutes reasonable suspicion is a commonsense test:   under all the facts and circum-stances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience. *Id.*, ¶ 8. Reasonableness is measured against an objective standard taking into consideration the totality of the circumstances. *See State v. Richardson*, 156 Wis. 2d 128, 139, 456 N.W.2d 830 (1990). If, during a valid traffic stop, the officer becomes aware of additional suspicious circumstances that give rise to a reasonable suspicion that the driver has committed or is committing an offense distinct from that prompting the initial stop, the officer may extend the stop for further investigation. *Colstad*, 260 Wis. 2d 406, ¶ 19.

■■■

¶ 14.   We will uphold a trial court's findings of fact unless the findings are against the great weight and clear preponderance of the evidence. *State v. King*, 175 Wis. 2d 146, 150, 499 N.W.2d 190 (Ct. App. 1993). However, whether a search or seizure passes constitu-tional muster is a question of law that we review de novo. *Id.*

¶ 15. We conclude that Ramstack could have formed a reasonable suspicion that Bons was engaged in illegal activity, in addition to the traffic violations, when he extended the traffic stop. Ramstack saw a shot glass sitting on the console of the vehicle in close proximity to the driver's seat. Bons appeared unusually nervous and he rolled up the windows and locked the doors when Ramstack asked him to exit the vehicle. This behavior, coupled with the presence of the shot glass on the console, gave Ramstack reasonable suspicion that Bons had been committing or was about to commit a crime involving alcohol, *see* WIS. STAT. § 346.935 (open container prohibition), and therefore provided Ramstack with the justification to extend the traffic stop to investigate further.

¶ 16. We next address whether Bons voluntarily consented to the search of his vehicle. Consent to search involves two questions: first, whether the defendant in fact consented to the search of his or her vehicle, and second, whether the consent was voluntary. *State v. Phillips*, 218 Wis. 2d 180, 196–97, 577 N.W.2d 794 (1998). As to the first question, Bons testified that he did not give his consent to search the interior or the trunk of the vehicle. Ramstack and the backup officer both testified that Bons affirmatively told Ramstack that he could conduct the searches of the vehicle. The court adopted as more credible the officers' version and we see no reason to disturb this determination. *See State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶ 19, 257 Wis. 2d 421, 651 N.W.2d 345.

¶ 17. As to the second question, voluntariness asks "whether consent to search was given in the

absence of duress or coercion, either express or implied." *Phillips*, 218 Wis. 2d at 196. Factors relevant to the totality of the circumstances of the search include: whether any misrepresentation, deception or trickery was used to persuade the defendant to consent; whether the defendant was threatened or physically intimidated; the conditions at the time the search was made; the defendant's response to the officer's request; the defendant's physical and emotional condition and prior experience with police; and whether the officers informed the individual that consent could be withheld. *See id.* at 198–203. The State must prove by clear and convincing evidence that consent is freely and voluntarily given. *Id.* at 197.

¶ 18.    The State has satisfied its burden to show the consent was voluntary. There is no suggestion of misrepresentation, deception, trickery or intimidation. The officers did not use weapons or force or otherwise take custody of Bons. Bons testified that Ramstack told him that he could be arrested, but the court did not accept this testimony. The court did accept the officers' testimony that when Bons said he did not have a choice but to acquiesce in the search, Ramstack informed him that he did have a choice in the matter and he could say "no." Finally, the court chose to believe the officers' testimony that Bons not only agreed to the search, but actually cooperated and even affirmatively assisted with the search by providing the keys to his car and opening the trunk. *See id.* at 201 (noting that a defendant's cooperation with police is a consideration when evaluating voluntariness of consent).

¶ 19.    In sum, we conclude that the State has met its burden that the expanded inquiry and search request were constitutionally permissible and that Bons

voluntarily consented to the search of his vehicle. We affirm the judgment of conviction.

¶ 20. Our affirmance on the merits does not end our discussion. Bons' attorney, Vladimir M. Gorokhovsky, certified in his brief-in-chief that he submitted an appendix in compliance with WIS. STAT. RULE 809.19(2)(a) (2005–06). The appendix, however, is in flagrant violation of the requirements of that rule.

¶ 21. Our supreme court has long emphasized the importance of the appendix to Wisconsin's fast-paced, high-volume appellate courts. In *Dutcher v. Phoenix Insurance Co.*, 37 Wis. 2d 591, 609–10, 155 N.W.2d 609 (1968), the court explained the purpose of the former supreme court rule requiring an appendix:

> The volume of work to be done by this court does not leave time for the justices to search the original record for each one to discover, if he [or she] can, whether appellant should prevail. An appendix conforming to [the supreme court rule] makes readily available to each justice the matters which he [or she] must know if he [or she] is to give intelligent attention to the issues presented by the appeal. It is counsel's duty to the court as well as to his [or her] client to furnish it (citation omitted).

Since that decision, appellate court reliance on appendices during the decision-making process has increased as the number of appeals has increased. *See* S. CT. ORDER 04–11, 2005 WI 149, 283 Wis. 2d xix cmt. at xx (eff. Jan. 1, 2006). For this reason, the supreme court recently amended WIS. STAT. § 809.19(2) to require that attorneys certify compliance with the rules regarding appendices. *See* S. CT. ORDER, 2005 WI 149 cmt. at xx. The purpose of the certification is to foster increased compliance with the rule and thereby improve the quality of appendices filed with the appellate courts. *Id.*

¶ 22. WISCONSIN STAT. RULE 809.19(2)(a) (2005–06) dictates that an appellant's appendix contain "relevant trial court record entries, the findings or opinion of the trial court and limited portions of the record essential to an understanding of the issues raised, including oral or written rulings or decisions showing the trial court's reasoning regarding those issues." Subsection (b), the certification provision, provides in part:

> An appellant's counsel shall append to the appendix a signed certification that the appendix meets the content requirements of par. (a) in the following form:

> I hereby certify that filed with this brief, either as a separate document or as a part of this brief, is an appendix that complies with s. 809.19(2)(a) and that contains: (1) a table of contents; (2) relevant trial court record entries; (3) the findings or opinion of the trial court; and (4) portions of the record essential to an understanding of the issues raised, including oral or written rulings or decisions showing the trial court's reasoning regarding those issues.

¶ 23. Applying the plain language of the rule, Gorokhovsky's certification of compliance is false. His appendix contains only a copy of the judgment of conviction, the notice of motion and motion to suppress, and the notice of intent to pursue postconviction relief. How these documents in any way inform this court about the trial court's determinations "essential to an understanding of the issues raised," we do not know. A judgment of conviction tells us absolutely nothing about how the trial court ruled on a matter of interest to the appellant. A notice of motion and motion to suppress and the notice of intent to pursue postconviction relief are meaningless to the discussion of the issues at bar. Here, the trial court provided extensive

oral decisions on the issue of whether Ramstack properly detained Bons and the question of whether Bons voluntarily consented to the searches of his vehicle or trunk. Both of these oral decisions were "essential to an understanding of the issues raised." Neither were in the appendix. Yet, Gorokhovsky certified that the essential items were in his appendix. They were not. Therefore, his certification is false. In fact, no items essential to our understanding of the issues were in his appendix.

¶ 24.   Filing a false certification with this court is a serious infraction not only of the rule, but it also violates SCR 20:3:3(a) (2006). This rule provides, "A lawyer shall not knowingly:   (1) make a false statement of fact or law to a tribunal." By attesting that he complied with the appendix rules when he did not, Gorokhovsky made such a false statement.

¶ 25.   Gorokhovsky's deficient appendix placed an unwarranted burden on this court. Failure to comply with a requirement of the rules "is grounds for imposition of a penalty or costs on a party or counsel, or other action as the court considers appropriate." WIS. STAT. 809.83(2) (2005–06). Accordingly, we sanction Gorokhovsky and direct that he pay $150 to the clerk of this court within thirty days of the release of this opinion.

*By the Court.*—Judgment affirmed; attorney sanctioned.

¶ 26. BROWN, J. (*concurring*).   Time and time again, we have seen worthless appendices filed since the court's inception in 1978. And as we see from reading the 1967 supreme court opinion in *Dutcher v. Phoenix Insurance Co.*, 37 Wis. 2d 591, 155 N.W.2d 609 (1968), the problem was apparent long before the creation of the court of appeals.

240

¶ 27. I say "worthless" because a judgment—either in a civil or criminal case—does not begin to tell us how the trial judge decided an issue of importance to the appellate litigant. Often, however, that is all we get. Or, we may get the formal written findings of fact and conclusions of law. These also are meaningless in many cases because they either do not address the issues raised on appeal or are so uninformative that they do not give us the rationale employed by the trial court in deciding a certain issue. After all, most were drafted by the winning attorney, not the trial judge. Appellate lawyers need to bear in mind that an appeal obliges this court, as an intermediate appellate court, to consider whether the circuit court committed error. As a result, we need to consider what the circuit court said, whether evidenced in a memorandum decision or in a transcript. When an appendix fails to provide the circuit court's rationale, our full understanding of the case is put on hold until we can ferret it out in the record. Enough already.

¶ 28. As the lead opinion points out, this court has a very high caseload. In our struggle to keep up and make sure cases do not lag, we take our work home or on the road with us while the file itself remains at the court. The briefs are all we have when we are operating under these circumstances. It is exasperating, to say the least, to read a brief and not be able to see for ourselves how the trial court dealt with an issue before us on appeal. We have to wait until we are back at court to dig out the file and search for the parts of the record that are pertinent. And that goes for all three judges on a panel. The good appellate litigators, and there are many, provide us with the information we need so that we can do our work in an efficient manner. How hard can it be for all attorneys writing a brief to do the same?

¶ 29. The rule was amended to require certification of a proper appendix for a reason: we hoped to finally spur all appellate attorneys—not just the good ones—to give us the information we need. It is time that the rule was enforced. It is time that lawyers stop thinking that if they just provide a copy of the judgment and motion papers, it will be adequate. These are NOT relevant court entries. It is time that all attorneys understand that it is often not sufficient to simply include a copy of the formal findings of fact and conclusions of law. If elsewhere in the record, oral or written rulings or decisions show the trial court's reasoning regarding those issues, they should be included in the appendix. By the same token, inundating us with reams and reams of material bearing no relation to the precise issues before the court is another practice that should be avoided.

¶ 30. One more thing. I anticipate that there are a few lawyers who may concede that the appendix may not be "complete" if it contains a copy of the judgment or the formal findings of fact/conclusions of law or irrelevant entries from the record, but would argue that being "incomplete" is not the same thing as being "false." To those, I respond that if a lawyer certifies to us that the oral or written rulings or decisions showing the trial court's reasoning regarding the issues on appeal are contained in the appendix, and the ruling or rulings are not in the appendix, it is false. I cannot conceive of any other answer.