**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 24, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1221-CR**

Cir. Ct. No. **2021CT47**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JONAH MICHAEL HOFFMAN,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waushara County: SCOTT C. BLADER, Judge. *Reversed and cause remanded with directions*.

¶1 NASHOLD, J.[1] Jonah Hoffman appeals a judgment of conviction for operating a motor vehicle while intoxicated (OWI), second offense. The sole

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

issue on appeal is whether the deputy who arrested Hoffman had probable cause to search Hoffman's truck for evidence of an open-container violation. Because I conclude that probable cause was lacking, I reverse Hoffman's conviction and the order denying Hoffman's motion to suppress, and I remand with directions that any evidence derived from the search be suppressed.

## BACKGROUND

¶2      The following facts are taken from the deputy's testimony at the suppression hearing and the deputy's dashcam video, which was entered into evidence and reviewed by the circuit court.

¶3      Just after 1:00 a.m. on a June morning, a sheriff's deputy driving his squad car in rural Waushara County ran the license plate of the pickup truck traveling in front of him. The plate came back registered to Hoffman; the deputy's computer system also informed him that Hoffman's driver's license was canceled. The deputy did not observe any violation of traffic laws or bad driving, but stopped Hoffman due to the license issue. The deputy activated his squad car's lights and, briefly, its siren, and Hoffman pulled over. Although Hoffman began pulling over nearly immediately, the deputy believed it took five to ten seconds longer than necessary for the truck to come to a complete stop, with the truck continuing for 20 to 30 feet before stopping.

¶4      Approaching the truck on foot, the deputy shined his flashlight into the back window of the truck's cab. In the center area of the back seat, he saw a six-pack of beer with only five bottles present. The bottles had condensation on them.

¶5    Both front windows of the truck were down, and Hoffman was smoking what "looked like a newly lit cigarette." The deputy thought the windows being down "was unusual given that it was raining on and off that morning," although the squad car video reflects that it was not raining at the time the stop began. The deputy testified that lowered windows and cigarettes are sometimes used to try to exhaust or conceal odors.

¶6    The deputy informed Hoffman that he had stopped him for a canceled license, and Hoffman responded that he believed he had resolved any license issues. During this exchange, the deputy noticed Hoffman had "glassy, bloodshot eyes" and also that an odor of intoxicants was "[c]oming from his breath when he was talking to me." When the deputy asked Hoffman whether he had been drinking, Hoffman replied that he had had a few drinks ending 25 or 30 minutes prior. The deputy requested that Hoffman perform three field sobriety tests, and Hoffman complied. The results of these tests were mixed, with Hoffman exhibiting some clues, but on two of the three tests, fewer clues than would indicate impairment. The deputy conducted a preliminary breath test (PBT), which yielded a result of .052, below the prohibited alcohol concentration. After receiving this result, the deputy alluded to the six-pack and asked if there were any open containers in the truck. Hoffman replied that there were not, and that the six-pack did not belong to him but to a friend, for whom he was transporting the six-pack. The deputy subsequently informed Hoffman that he would not be arrested for OWI; he testified that Hoffman had been "right on the fringe."

¶7    The deputy told Hoffman that he would not permit Hoffman to drive away; he testified that this was because he believed Hoffman's license to be canceled and because, although he was not arresting Hoffman for operating while intoxicated, he was not comfortable with Hoffman continuing to drive. The video

reflects that the deputy asked Hoffman whether Hoffman could call anyone to come and pick him up, and that Hoffman responded that his mother or his sister could do so. The deputy escorted Hoffman from behind the truck to the driver's side door and Hoffman retrieved his phone from the cab. The deputy then told Hoffman he would be searching the truck for open containers.

¶8 During this search, the deputy found marijuana and marijuana paraphernalia. After conducting further field tests that were marijuana-specific, the deputy arrested Hoffman for operating under the influence of marijuana.

¶9 Hoffman moved to suppress the evidence derived from the search of his truck. After the suppression hearing, the parties briefed the issues, with the State arguing that the deputy had probable cause to search for open containers. The circuit court agreed with the State and denied Hoffman's motion to suppress.

¶10 Hoffman pled no contest pursuant to a plea bargain and was convicted and sentenced. He now appeals. *See* WIS. STAT. § 971.31(10) (order denying a motion to suppress evidence not subject to guilty-plea waiver rule).

## DISCUSSION

¶11 In reviewing motions to suppress, this court applies a two-step standard of review. In the first step, this court upholds the circuit court's findings of fact unless they are clearly erroneous. In the second, the court "independently review[s] the application of constitutional principles to those facts." *State v. Scull*, 2015 WI 22, ¶16, 361 Wis. 2d 288, 862 N.W.2d 562.

¶12 The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution both safeguard the people's right to be free from unreasonable searches and seizures. *State v. Robinson*, 2010

4

WI 80, ¶24, 327 Wis. 2d 302, 786 N.W.2d 463. "Subject to a few well-delineated exceptions, warrantless searches are deemed per se unreasonable under the Fourth Amendment."[2] *State v. Faust*, 2004 WI 99, ¶11, 274 Wis. 2d 183, 682 N.W.2d 371. The State has the burden of proving that a challenged warrantless search falls within one of the exceptions to the general rule that warrantless searches are per se unreasonable. *State v. Pozo*, 198 Wis. 2d 705, 710 n.2, 544 N.W.2d 228 (Ct. App. 1995).

¶13 The State argues that the deputy's search was lawful under the automobile exception to the warrant requirement. This rule, applicable under both the United States and Wisconsin Constitutions, permits law enforcement to search a vehicle without a warrant when there is probable cause to believe that the vehicle contains contraband or evidence of a crime. *State v. Tompkins*, 144 Wis. 2d 116, 130, 423 N.W.2d 823 (1988); *State v. Marquardt*, 2001 WI App 219, ¶11, 247 Wis. 2d 765, 635 N.W.2d 188. The State specifically contends that the deputy had probable cause to believe he would uncover evidence that Hoffman had been driving with an open container of alcohol in his truck, contrary to WIS. STAT. § 346.935.

---

[2] One such exception permits an officer to perform a pat-down search during an investigatory stop if there is reasonable suspicion that the subject of the stop is armed. *See State v. Guy*, 172 Wis. 2d 86, 95, 492 N.W.2d 311 (1992). During a traffic stop, such a "frisk" for weapons can extend to the passenger compartment of an automobile; again, this is permissible only when there is reasonable suspicion that there are weapons in the vehicle. *State v. Moretto*, 144 Wis. 2d 171, 181-82, 423 N.W.2d 841 (1988). Here, the deputy testified that his search of Hoffman's truck was motivated in part by a concern for weapons, but the circuit court concluded that there was no reason to believe that Hoffman was armed or posed a threat to the deputy. Because the State did not argue this ground in the circuit court and does not do so on appeal, I do not discuss it further.

¶14 Probable cause is present when the facts available to police would "'warrant a [person] of reasonable caution in the belief,' that the contraband was likely to be in the place searched." *Tompkins*, 144 Wis. 2d at 124 (alteration in original). To determine the presence or absence of probable cause, this court must consider the totality of the circumstances. *Robinson*, 327 Wis. 2d 302, ¶27. Based on the totality of circumstances, I conclude that there was not probable cause to search Hoffman's vehicle for open containers.

¶15 To be sure, there are facts that tend to show that Hoffman was driving after having consumed alcohol: his eyes were glassy and bloodshot; the deputy could smell alcohol on Hoffman's breath; Hoffman had apparently lit a cigarette shortly before the deputy's approach of his vehicle (which could mask odors); his truck windows were down (which could dissipate odors); Hoffman admitted to having consumed alcohol; he exhibited some clues in field sobriety testing; and the result of Hoffman's PBT was .052.

¶16 As the State argues, these facts, by virtue of their tendency to show that Hoffman had been drinking, may contribute, to some extent, to a suspicion that Hoffman had open intoxicants in the truck. However, the fact that Hoffman had consumed alcohol is only minimally suggestive of an open-container violation. It is not illegal for an adult over 21 years old to drive after having consumed alcohol, provided the driver is not impaired or over the legal limit; here, as stated, the deputy did not arrest Hoffman for OWI prior to searching the vehicle. Relatedly, and in part because it is not illegal to drink, there is no shortage of places and circumstances—aside from a vehicle on the highway—in which people consume alcoholic drinks. It would therefore be a logical leap to conclude that because a motorist has some alcohol in the bloodstream, that motorist likely possesses an open container in the vehicle.

¶17     However, in addition to the facts tending to show that Hoffman had consumed alcohol, there were two more facts known to the deputy that could contribute to a belief that Hoffman had an open container in his truck. First, the deputy testified that although Hoffman began to pull over promptly after the deputy activated his lights and siren, during this maneuver, Hoffman's truck slowed down and moved off to the side of the road, then continued for 20 to 30 feet before stopping. The deputy testified that in total Hoffman took five to ten seconds to bring his truck to a complete stop. The deputy testified that "typically when [he] see[s] that happen, it's usually somebody's doing something in the cab of the vehicle." He added that "[t]here's always the risk of people concealing things, hiding weapons, contraband, anything really."

¶18     The circuit court—which noted that it had viewed the squad car video three times—did not rely on the deputy's testimony on this point in reaching its decision. This court has likewise repeatedly reviewed the video of the stop. *See* **State v. Rejholec**, 2021 WI App 45, ¶17, 398 Wis. 2d 729, 963 N.W.2d 121 (appellate court is in the same position as the circuit court in reviewing video evidence). Although it appears likely from the video that it would have been possible for Hoffman to have slowed his truck more quickly, the additional time it took Hoffman to come to a complete stop alongside the road was not significant.[3] Thus, while I consider among the totality of the circumstances the deputy's testimony that the truck did not slow down as quickly as it could have, I agree

---

[3] On cross-examination, defense counsel asked the deputy whether he noticed a "huge embankment … that Mr. Hoffman drove right past before he could safely pull over onto the shoulder," and the deputy responded that he did not. Counsel did not, in the circuit court, point to any segment of the video showing such an embankment, nor does he do so on appeal. From my own review of the video, I am unable to discern any such embankment. Accordingly, I do not consider counsel's statement on this point.

with the circuit court's apparent view that this factor does not add much to the analysis of whether there was probable cause to believe that Hoffman was concealing an open container of alcohol.

¶19    There is one additional fact to consider: the six-pack on the back seat with only five bottles in it. The deputy testified that the bottles had condensation on them, suggesting that they were cold, and thus had been put in the truck somewhat recently. When asked by the deputy, Hoffman denied that there was any open container in the truck; he also told the deputy that the beer was not his, but a friend's, and that he was simply transporting it. Although the deputy was not obligated to accept Hoffman's word, the fact remains that, other than admitting to recently consuming alcohol, Hoffman did not provide information that would support an inference that the missing sixth bottle was somewhere in the truck.

¶20    Even in combination with the factors discussed above, I cannot conclude that the unremarkable conduct of transporting a cold six-pack in the back seat with a bottle missing creates probable cause to believe that Hoffman possessed an open container in his truck. Partially full packages of alcoholic beverages are legal, and six-packs and cases, whether full or partially empty, are a common way to transport beer. *See **People v. Nadermann***, 723 N.E.2d 857, 860-62 (Ill. App. 2000) (no probable cause to search van for open container where passenger was very intoxicated and officers found a torn-open cardboard package of beer behind the driver's seat with some of the cans missing: "[W]e hold that a ripped cardboard package holding beer cans, whether the package is full or not, located in the passenger compartment of a vehicle absent evidence that at least one of the individual containers is open, does not violate [the open-container law].").

¶21    The case law upon which the circuit court and parties rely does not provide otherwise.  In determining that the deputy had probable cause to search for an open container, the circuit court relied on ***State v. Bons***, 2007 WI App 124, 301 Wis. 2d 227, 731 N.W.2d 367.  The parties, too, offer ***Bons*** as the only case presenting comparable facts.

¶22    In ***Bons***, an officer pulled over a speeding driver, Bons, and on approach found Bons "very fidgety" and nervous.  ***Id.***, ¶2.  While speaking with Bons, the officer noted a shot glass between the driver's and passenger's seats atop the emergency brake.  ***Id.***  When asked about this, Bons said he had forgotten to take it out of the car after a party on a prior evening.  ***Id.***  When the officer asked Bons to exit the vehicle, he did so, but rolled up all the windows and locked the doors, which the officer testified was "very unusual behavior."  ***Id.***, ¶4.  The ***Bons*** court concluded that these facts justified the officer in extending the stop beyond the time necessary to complete and deliver the citations, in order to investigate whether Bons was violating the open-container law.  ***Id.***, ¶15.

¶23    ***Bons*** does not shed a great deal of light here.  Although both that case and this one concern the open-container law, the facts are quite disparate, with the facts in ***Bons*** more indicative of an open-container violation.  In addition, ***Bons*** was a reasonable-suspicion case.  ***Id.***, ¶¶13, 15.  Again, here, the deputy needed probable cause to search Hoffman's truck.  ***Tompkins***, 144 Wis. 2d at 130.

¶24    This court's own research has not located any other case law directly on point.  The closest is ***State v. Johnston***, No. 2012AP2427, unpublished slip op. (WI App Apr. 16, 2013).  That case, like this one, involved a partially empty package of cold beers in a vehicle, and an odor of intoxicants.  ***Id.***, ¶5.  The driver, Johnston, was sweating and would not make eye contact with the officer.  ***Id.***, ¶4.

9

The officer had Johnston perform field sobriety tests and took a PBT that produced a result of .00. *Id.*, ¶7. The officer decided to search the car for open intoxicants. He instead found marijuana. *Id.*, ¶¶8-9.

¶25 On appeal, this court found the search justified by probable cause. But while the facts in *Johnston* bear a resemblance to those here, there is also a crucial difference: in *Johnston*, the officer was able to trace the odor of alcohol to the vehicle itself, while in this case, the deputy testified that it was Hoffman, rather than his vehicle, emitting the odor. As the *Johnston* court noted, Johnston's PBT result of .00 "eliminat[ed] [him] as the source of the odor." *Id.*, ¶18. The *Johnston* court further observed that, because the odor was not coming from Johnston, it must have been coming from inside the vehicle, and "[c]ommon sense dictates that an open can of beer emits an odor of alcohol." *Id.*, ¶17.

¶26 Here, the opposite facts are presented: the deputy initially testified that when speaking with Hoffman, he noticed an odor of intoxicants. Asked specifically where this odor was coming from, the deputy replied that it was "[c]oming from his breath when he was talking to me." And, as stated, the PBT result here was not .00, but .052; Hoffman was therefore not "eliminated" as the source of the odor as Johnston was.

¶27 Considering the totality of facts available to the deputy, I agree with the circuit court that this is a "difficult" or close case. But particularly in light of the fact that probable cause, rather than reasonable suspicion, is the standard here, I conclude that the State has not met its burden of establishing an exception to the warrant requirement, specifically, that there was probable cause to believe that Hoffman's truck contained an open container of alcohol. *See* ***State v. Young***, 2006 WI 98, ¶22, 294 Wis. 2d 1, 717 N.W.2d 729 ("Whereas a mere hunch is

insufficient to establish reasonable suspicion, reasonable suspicion is insufficient to establish probable cause."). Accordingly, the judgment of conviction and order denying Hoffman's motion to suppress are reversed, and this matter is remanded with directions that evidence derived from the search of Hoffman's truck be suppressed.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.